Submitted on record and briefs January 23, reversed and remanded for new trial
May 3, 2006

## STATE OF OREGON,
*Respondent,*

*v.*

## BRADLEY FRANKLIN CARTER,
*Appellant.*

## C031708CR; A123757

134 P3d 1078

James N. Varner filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Carolyn Alexander, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

LANDAU, P. J.

**LANDAU, P. J.**

Defendant appeals a judgment of conviction of rape in the first degree, ORS 163.375; sexual abuse in the first degree, ORS 163.427; sexual abuse in the third degree, ORS 163.415; and furnishing alcohol to a person under 21 years of age, ORS 471.410. His sole contention is that the trial court erred in denying his motion to excuse a juror for cause. We agree and reverse and remand for a new trial.

The relevant facts are not in dispute. During jury selection the following colloquy occurred with prospective juror Henson, beginning with a discussion of his prior work in the State of Tennessee:

"Q. [Defense counsel] What type of work were you doing in Tennessee?

"A. I was like a cop (indiscernable).

"Q. Cop.

"A. Yeah.

"Q. Is there anything about the work that's going to impact your ability to sit in judgment in this case?

"A. Probably not on that. I don't like the drinking and drugs, I have a problem with that.

"Q. Okay. But what about just your involvement with law enforcement that leads you to believe some people maybe at this stage are all guilty or people accused with crimes are all guilty or everyone lies, anything like that?

"A. I think people on drugs will lie for their drugs * * *. Probably alcohol, too, because my wife is an alcoholic, I had problems over that. We were separated twice and I'm still dealing with that.

"Q. What about the nature of the allegations of alleged sex crimes in this case, does that give you reasonable cause about your ability to be fair?

"A. From what I heard so far, I would have to hear a lot of good stuff to probably change what I feel already.

"Q. What does that mean? Tell me what that means.

"A.   From just what you've been talking about: A little bit of force, amount of drugs, whatever was involved in it.

"Q.   You said you would have to hear a lot of good stuff to change the way how you feel already. I guess my question is how do you feel already?

"A.   Well, I feel like he's guilty. * * * I mean like I say, I haven't heard all the other stuff, but I mean that's just right off the bat how I feel, I mean but—

"Q.   And even though you haven't heard any evidence and there is a presumption of innocen[ce], you still think that he's more than likely guilty?

"A.   Yeah. I could—maybe I could change my mind, I don't know, I would have to hear probably more to find out to see.

"Q.   Just a second. * * * Do you think it would be fair to have someone having the same thoughts that you're having be on the jury?

"A.   Probably not, really.

"Q.   So you don't think you could be fair?

"A.   No."

Defendant challenged Henson for cause. The prosecutor asked whether Henson understood that he would be asked to agree to follow the law, and Henson replied, "Yeah." The prosecutor then explained that a juror is required to presume a defendant innocent until proved guilty beyond a reasonable doubt and then asked whether Henson could follow such an instruction. Henson replied, "Yeah, I could probably do that."

The trial court then questioned Henson:

"Q.   I don't want to beat a dead horse, but I want to make sure that you and I are on the same page. Just sitting and as a human being rather than even as a juror, just sitting and hearing everything you heard—well, he might well be guilty, but then you have to change your role. Now you become a juror, and the Constitution of the United States, which is the highest law we have, it's a secular law, the way we have, says you have to as a juror start from the proposition that he's not guilty, and force the state to move you to that he's guilty with evidence beyond a reasonable doubt.

And I will put it as clearly as I can. I personally oppose the death penalty, I think it's a very significant waste of resources and I think it demeans the state of Oregon. I have signed more orders that people be put to death than all other judges in this county in history because that's my job as opposed to my personal feelings. Okay. Now, can you kind of do the same thing I have to do sometimes and follow the law and what it says? And if it's different than my personal feelings, I have to set my personal feelings aside, can you do that?

"A. I guess I could try."

The trial court said, "I think that's all we can ask," and denied defendant's motion. Shortly thereafter, the court commented to defendant that "you're lucky Mr. Henson is not a leader." Defendant renewed his motion to excuse Henson for cause. The trial court again denied the motion, commenting that Henson has "his own personal beliefs but he said he can set them aside, and I believe him."

■ On appeal, defendant contends that the trial court abused its discretion in denying the motion to excuse Henson for cause. He argues that Henson plainly said that he believed defendant to have been guilty, that he did not think it fair for him to be on the jury, and that he stated without qualification that he could not be fair. Even in response to the prosecutor's and the trial court's questions, defendant argues, Henson said only that he "could try" to follow the court's instructions. That, argues defendant, is not enough to overcome previous statements that clearly demonstrate Henson's actual bias.

The state argues that the trial court found that Henson would set aside his personal feelings and that we cannot set aside that finding except for a manifest abuse of discretion. Citing *State v. Fanus*, 336 Or 63, 79 P3d 847 (2003), and *State v. Compton*, 333 Or 274, 39 P3d 833 (2002), the state argues that, even when a prospective juror acknowledges a measure of personal bias, if that juror later demonstrates a willingness to set aside that bias, the trial court's denial of a motion to excuse the juror for cause cannot be second-guessed by an appellate court.

ORCP 57 D(1)(g) provides that a prospective juror may be excused for actual bias. ORS 136.210(1) makes that rule applicable to criminal trials. In *Fanus*, the Supreme Court explained in the following terms that rule as it applies to criminal trials:

> "Under ORCP 57 D(1)(g), the fact that a prospective juror has formed opinions about matters relevant to the case is not itself cause to exclude that juror based on actual bias. Instead, in determining whether a prospective juror should be excused for actual bias, the test is whether the prospective juror's ideas or opinions would impair substantially his or her performance of the duties of a juror to decide the case fairly and impartially on the evidence presented in court. Whether a prospective juror is actually biased is a factual question to be determined by the trial court as an exercise of its discretion. Because the trial court has the advantage of observing the demeanor, apparent intelligence, and candor of a challenged prospective juror, a trial court's discretionary decision on such a challenge is entitled to deference and will not be disturbed absent a manifest abuse of discretion."

336 Or at 83 (citations omitted).

The facts in *Fanus* serve to illustrate the proper application of the rule. In that case, a juror initially stated that she had formed opinions relating to the defendant and to the defendant's guilt from pretrial publicity about the case. When the defendant challenged her for cause, the prosecutor elicited from the juror an unqualified commitment that she was willing and able to comply with a juror's oath to assess a defendant's guilt only upon the evidence presented at trial and to require the state to prove its case beyond a reasonable doubt. The trial court also questioned the juror, and she "confirmed that she understood that defendant was presumed innocent, that the state had the burden to prove the charges beyond a reasonable doubt, and that, as a juror, she would be required to base her decision as to defendant's guilt upon only the evidence presented at trial." *Id.* at 81. She also volunteered that she knew from her own experience that facts reported in the news are not always accurate. *Id.* The trial court asked again whether she had formed a fixed opinion as to the defendant's guilt and whether she would be able to

judge defendant fairly. She denied that she had formed such an opinion, at which point the trial court denied the defendant's motion.

The Supreme Court held that, although the juror initially had stated that she had developed opinions about the case, she later "was unequivocal that she was willing and would be able to require the state to prove defendant's guilt beyond a reasonable doubt and to base her decision upon only the evidence presented at trial." *Id.* at 84. Moreover, the court stated, the juror "assured the trial court that she had not formed strong opinions about the case," which, the court stated, the trial court regarded as credible. *Id.* In light of the unequivocal nature of those assurances, the court held, the trial court had not abused its discretion in believing them. *Id.*

In *Compton*, a juror similarly stated during *voir dire* that she believed that criminal defendants should be required to prove their innocence and that, if she heard a jury instruction that conflicted with her personal beliefs, she would follow her own beliefs. 333 Or at 284. The prosecutor then explained to the juror that the state, not the defendant, bore the burden of proof and that the state's burden was to prove guilt beyond a reasonable doubt. The juror then agreed with the prosecutor that, if criminal charges had been filed against her, the state would be required to prove those charges. The following colloquy then occurred:

" 'Q. [Prosecutor]: And would you accept that same circumstance for this defendant?

" 'A. I see what he is saying now. Yeah, I understand now.

" 'Q. If you were to sit on this jury and the State put on its case and defendant didn't put on any evidence at all, would you be able to say to all of us now that you wouldn't hold that against him because it's not his obligation to prove anything?

"[Prosecutor repeats question at [juror's] request.]

" 'A. No, I wouldn't hold it against him.

" 'Q. The State is required to prove to your satisfaction beyond a reasonable doubt that the defendant did it.

" 'A. Yes.' "

*Id.* at 284-85. The defendant moved to dismiss the juror, but the trial court denied the motion.

The Supreme Court concluded that, "once she understood the role of a juror and the responsibility of the state to prove defendant guilty beyond a reasonable doubt, [the juror] expressed her willingness to perform the tasks of a juror in the manner required by law." *Id.* at 286. The court held that, in light of the juror's affirmative statements that she would follow the law, the trial court did not abuse its discretion in denying the defendant's motion to excuse her. *Id.*

This case stands in sharp contrast to *Fanus* and *Compton*. Juror Henson stated that he believed that defendant was guilty and that he would have to hear "a lot of good stuff" to get him to change his mind. He said without qualification that he did not think that he could be fair and that he did not think it fair to put him on the jury. In response to questioning from the prosecutor, he said that he "probably" could follow the law notwithstanding his predispositions. In response to the trial court's further questioning, he said only, "I guess I could try" to follow the law. Thus, there is in this case none of the rehabilitation that occurred in both *Fanus* and *Compton*. The best that Henson would offer the court is a guess that he "could try" to follow the law.

■    The state insists that we are in no position to declare an abuse of discretion, particularly in light of the trial court's assessment that Henson "has his own personal beliefs but he said that he can set them aside, and I believe him." We agree that the standard of review is deferential. But "deferential" does not mean unbounded. In this case, the trial court did remark that he believed Henson when Henson said that he could set aside his personal beliefs. The problem is that, as we have noted, Henson never said that he could do so. Moreover, the trial court itself remarked to defendant that "you're lucky Mr. Henson is not a leader." We are at a loss to understand what the trial court meant if it believed that Henson truly intended to "set aside his personal beliefs."

We conclude that the trial court erred in denying defendant's motion to excuse juror Henson for cause.

Reversed and remanded for new trial.