Submitted February 17, reversed and remanded May 27, 2009

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# RICHARD DEAN DALESSIO,
*Defendant-Appellant.*

Josephine County Circuit Court
04CR0925; A131780

208 P3d 1021

Ingrid A. MacFarlane filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and David B. Thompson, Senior Assistant Attorney General, filed the brief for respondent.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Carson, Senior Judge.

BREWER, C. J.

### BREWER, C. J.

Defendant, alone in his home and contemplating suicide, stepped onto his porch and opened fire on police officers who had been dispatched to his home in response to a call from his family. Defendant rapidly fired four or five rounds from a pump-action shotgun and, as the officers retreated behind their vehicles, one of them was wounded by the gunfire. Defendant subsequently surrendered and, after a jury trial, was convicted of attempted aggravated murder, attempted felony murder, and second-degree assault. He now appeals, arguing that the trial court abused its discretion when it refused to dismiss a juror, a retired police officer with 30 years' experience who, one day into the trial, came forward and told the court, "[A]fter sleeping on it and getting up this morning and struggling with some things, I d[on't] feel like I should sit on—this particular case." We reverse and remand.[1]

Because this case turns on the statements made by a juror, T, we describe them in some detail. At *voir dire*, prospective jurors were asked, as a pool, whether "[a]nything about a police officer being shot * * * just strike[s] a chord with you that you don't think that you could be fair in a type of case like this." Defense counsel then asked T directly whether, as a former police officer, he could be fair. T replied, "I'm just trying to be as fair as I can." Counsel then asked T whether "[a]nything in your experience will affect your ability to be fair and impartial." and T again answered, "I don't think so. I'll try to be as fair as I can." T was seated as a juror.

The next day, after the trial had commenced and the first witness had finished testifying, T approached the court clerk and asked to speak with the judge. The judge brought T to the courtroom where both the prosecutor and defense counsel could question him on the record. T told the court:

"Well, I was surprised that I was not taken—removed from the jury list with my background, but when I was chosen to be a juror I just decided I would go ahead and make the best of it. But after sleeping on it and getting up this

---

[1] Defendant also raises a second assignment of error, which we reject without discussion.

morning and having some thoughts and maybe some judgments just based on what I've seen so far that I really shouldn't be making I think because of my background. .

"I don't have any problems serving on the jury. I just don't think I should be on a jury that involves assault on police officers."

The court then told T that it could not expect him to set aside his experiences as a police officer but that, instead, T should focus on setting aside "any potential biases for or against either side, listen to the evidence as it comes in." The court then asked T "if it's more personal, [and] it's more that this is bringing up things that you thought were old issues from the past * * * and it's weighing on your mind and making you feel that it's, I guess in the worst case physically debilitating to you, then that's another matter." T replied, "That's a lot of what it is, Your Honor."

The prosecutor then questioned T about his background as a police officer and whether he had experience with arresting the same person multiple times. T said that he had. The prosecutor then asked T if, on those occasions, "you ma[de] an independent decision about whether you had enough information to arrest them each time based on the evidence," and T answered that he had. When asked by the prosecutor about his statement at *voir dire* that he could be fair, T said, "[L]ike I told the judge, I—after sleeping on it and getting up this morning and struggling with some things, I didn't feel like I should sit on—this particular case." The prosecutor then asked T whether he might be feeling uneasy because "you've heard enough to know how you're leaning in the case," and T answered, "That's correct." T also agreed that other jurors could be feeling the same way.

Defense counsel also questioned T and asked him whether "your experience is causing you some personal anguish in terms of having to sit through this case for three days. * * * It's bringing back old memories or something of that nature." T replied, "There is a little bit of that going on. Yeah." Probing further, defense counsel asked T to differentiate between his experiences as a police officer and his personal feelings about the case.

"Is it—which is it—I guess what I'm wondering about is which is more, or is it both? Is it because you're an ex-police officer and you're hearing a case involving police officers and you think your experience is just—you've got too much experience, or is it because after you've slept on it and you realized this is hitting too close to home and too personal?"

T answered, "I think that's probably what it is. I think that I should be on a case that's not involving—if this was just citizens being fired upon, or something like that I don't think I would have a problem with it." Finally, defense counsel asked T about his statement at *voir dire* that he could be fair: "[Y]ou know, you said you could be fair and impartial. But in your mind—you really thought you were going—you were on the way out anyway, is that what I'm hearing?" T said, "Yes." Defense counsel then suggested that T be removed and replaced with one of the two alternate jurors. The prosecutor responded that T had already been sworn as a juror after full *voir dire* and that he perceived no cause to remove T from the panel.

The court again questioned T about the level of stress the case was causing him, asking particularly about whether T believed hearing the case could trigger any post-traumatic stress. The court told T that, "It doesn't sound to me that it's causing you that much personal stress. Do you agree with that?" T replied, "It's really hard to say at this point. I'm * * * stress[ed] right at this point." After hearing that statement, the trial court told T that it would keep him on the jury. T replied, "I just wanted to put that information out there in front of the court the way I feel about it." T continued, "Like I say, I don't mind serving on the jury. I'm not trying to get out of it because of the time involved." The trial court told T that it understood his position and instructed him not to talk with the other jurors about their conversation. Defendant was convicted, and this appeal followed.

■ Defendant contends that the trial court abused its discretion by refusing to remove T because (1) there were alternate jurors available to serve on the case, and (2) in defendant's view, T was "unable to affirm his ability to be fair and impartial, but instead maintained his desire to be disqualified despite attempts to rehabilitate him as a juror[.]" The state counters that, under *State v. Compton*, 333 Or 274,

39 P3d 833, *cert den*, 537 US 841 (2002), and *State v. Fanus*, 336 Or 63, 79 P3d 847 (2003), *cert den*, 541 US 1075 (2004), the trial court did not abuse its discretion in declining to excuse T. We agree with defendant.

■ Actual bias is a basis for challenging prospective jurors. *See* ORCP 57 D(1)(g) (made applicable to criminal trials by ORS 136.210(1)). In deciding whether a juror should be excused, "the test is whether the prospective juror's ideas or opinions would impair substantially his or her performance of the duties of a juror to decide the case fairly and impartially on the evidence presented in court." *State v. Barone*, 328 Or 68, 74, 969 P2d 1013 (1998). Whether a prospective juror actually is biased is a factual question "to be determined by the trial court in the exercise of its discretion." *State v. Montez*, 309 Or 564, 574-75, 789 P2d 1352 (1990). Because the trial court has the advantage of observing a challenged prospective juror's demeanor, apparent intelligence, and candor, that court's judgment as to the prospective juror's ultimate qualifications is entitled to great weight. *Id.* at 575.

Here, defendant asserts that T "brought to his role as juror personal experiences admittedly affecting his ability to be fair." Defendant places special reliance on what he characterizes as T's failure "to say he could be fair and impartial despite attempts to get him to say this." We agree. Unlike the jurors in *Fanus* and *Compton*, here—despite the prosecutor's attempts to rehabilitate him—T did not reaffirm his *voir dire* statement that he could impartially weigh the evidence against defendant.

In *Fanus*, a juror initially stated that she had formed opinions relating to the defendant and to the defendant's guilt from pretrial publicity about the case. When the defendant challenged her for cause, the prosecutor elicited from the juror an unqualified commitment that she was willing and able to comply with a juror's oath to assess a defendant's guilt only on the evidence presented at trial and to require the state to prove its case beyond a reasonable doubt. The trial court also questioned the juror, and she "confirmed that she understood that defendant was presumed innocent, that the state had the burden to prove the charges beyond a reasonable doubt, and that, as a juror, she would be required

to base her decision as to defendant's guilt upon only the evidence presented at trial." *Fanus*, 336 Or at 81. She also volunteered that she knew from her own experience that facts reported in the news are not always accurate. The trial court asked again whether she had formed a fixed opinion as to the defendant's guilt and whether she would be able to judge the defendant fairly. She denied that she had formed such an opinion, at which point the trial court denied the defendant's motion.

The Supreme Court held that, although the juror initially had stated that she had developed opinions about the case, she later "was unequivocal that she was willing and would be able to require the state to prove defendant's guilt beyond a reasonable doubt and to base her decision upon only the evidence presented at trial." *Id.* at 84. Moreover, the court stated, the juror "assured the trial court that she had not formed strong opinions about the case," which, the court stated, the trial court regarded as credible. *Id.* In light of the unequivocal nature of those assurances, the court held, the trial court had not abused its discretion in declining to excuse the juror.

In *Compton*, a juror similarly stated during *voir dire* that she believed that criminal defendants should be required to prove their innocence and that, if she heard a jury instruction that conflicted with her personal beliefs, she would follow her own beliefs. 333 Or at 284. The prosecutor then explained to the juror that the state, not the defendant, bore the burden of proof and that the state's burden was to prove guilt beyond a reasonable doubt. The juror then agreed with the prosecutor that, if criminal charges had been filed against her, the state would be required to prove those charges. The following colloquy then occurred:

"Q. [Prosecutor]: And would you accept that same circumstance for this defendant?

"A. I see what he is saying now. Yeah, I understand now.

"Q. If you were to sit on this jury and the State put on its case and defendant didn't put on any evidence at all, would you be able to say to all of us now that you wouldn't

hold that against him because it's not his obligation to prove anything?

"* * * * *

"A.   No, I wouldn't hold it against him.

"Q.   The State is required to prove to your satisfaction beyond a reasonable doubt that the defendant did it.

"A.   Yes."

*Id.* at 284-85 (internal quotation marks omitted). The defendant moved to dismiss the juror, but the trial court denied the motion. The Supreme Court concluded, "[O]nce she understood the role of a juror and the responsibility of the state to prove defendant guilty beyond a reasonable doubt, [the juror] expressed her willingness to perform the tasks of a juror in the manner required by law." *Id.* at 286. The court held that, in light of the juror's affirmative statements that she would follow the law, the trial court did not abuse its discretion in denying the defendant's motion to excuse her.

Our opinion in *State v. Carter*, 205 Or App 460, 134 P3d 1078 (2006), is also instructive. There, a prospective juror was questioned about whether his previous experience as a police officer might bias him against the defendant. *Id.* at 462. After denying that his experience as a police officer would affect his judgment, the prospective juror told defense counsel that he had strongly held opinions against drugs and alcohol and that he considered individuals who used drugs or alcohol to be untrustworthy. *Id.* at 463. Because the defendant was on trial for sexual abuse, defense counsel asked the prospective juror whether the nature of the alleged crimes would affect his judgment, and the prospective juror answered, "From what I heard so far, I would have to hear a lot of good stuff to probably change what I feel already." *Id.* at 462. When defense counsel asked him to elaborate, the following colloquy ensued:

"A.   Well, I feel like he's guilty. * * * I mean like I say, I haven't heard all the other stuff, but I mean that's just right off the bat how I feel, I mean but—

"Q.   And even though you haven't heard any evidence and there is a presumption of innocen[ce], you still think that he's more than likely guilty?

"A. Yeah. I could—maybe I could change my mind, I don't know, I would have to hear probably more to find out to see.

"Q. Just a second. * * * Do you think it would be fair to have someone having the same thoughts that you're having be on the jury?

"A. Probably not, really.

"Q. So you don't think you could be fair?

"A. No."

*Id.* at 463. After reviewing the holdings in *Fanus* and *Compton*, we concluded:

"This case stands in sharp contrast to *Fanus* and *Compton*. * * * [T]here is in this case none of the rehabilitation that occurred in both *Fanus* and *Compton*. The best that [the prospective juror] would offer the court is a guess that he 'could try' to follow the law."

*Id.* at 467. Accordingly, we held that the trial court had abused its discretion in refusing to grant the defendant's motion to remove the prospective juror for cause. *Id.* at 468.

Although not identical to any of the described cases, the circumstances here more closely resemble those in *Carter* than those in *Fanus* or *Compton*. Viewed in context, T's statements evinced more than mere personal discomfort with the case because of his status as a former police officer. Under questioning by the trial court, T did not merely say that he was suffering from stress but, instead, repeated that he did not believe he should serve on a jury involving an assault on a police officer. T explicitly stated that he had been making "some judgments" that he thought he "really shouldn't be making[.]" The most natural reading of T's statements is that he was genuinely concerned that his experience as a police officer was biasing him against defendant and that he believed he should be removed from the jury for that reason. Moreover, not only did T fail to reaffirm his *voir dire* statement that he could impartially weigh the evidence against defendant, he implicitly disclaimed that statement when he agreed with defense counsel that he had previously answered the question regarding his ability to be fair with the expectation that he would not be seated as a juror. T's statement to

the trial court that he "d[idn't] mind serving on the jury. I'm not trying to get out of it because of the time involved" reflects, in our view, T's willingness to serve as a juror in a *different* case; that is, a case not involving an assault on police officers, as T had previously explained during questioning by the prosecutor.

Although our standard of review in these cases is deferential, " 'deferential' does not mean unbounded," and here the trial court did not make an explicit finding that T could provide defendant with a fair trial. *Carter*, 205 Or App at 467. Although such a finding would be consistent with the court's ultimate conclusion—retaining T as a juror—the record does not support any such finding. In light of T's expressed concerns and his inability to reaffirm his *voir dire* statement that he could afford defendant a fair trial, the trial court abused its discretion by failing to discharge T and replace him with an alternate juror.[2]

Reversed and remanded.

---

[2] Although we refer to "T's inability to reaffirm" his *voir dire* answer, it bears noting that he was never *expressly* asked to do so. Moreover, our discussion of T's expressed concerns should in no way be read to criticize him for what was, in our opinion, a commendably frank acknowledgment of his own potential biases.