AOYAGI, J.
*286 Defendant appeals a judgment of conviction for five counts of sexual abuse. In his first assignment of error, he argues that the trial court abused its discretion when it denied his motion to strike a prospective juror, Juror 11, for cause. Because we agree with defendant, we reverse and remand for a new trial, and we do not reach his other assignments of error.
The relevant facts are procedural and undisputed. The state charged defendant with five counts of sexual abuse in the first degree, ORS 163.427, based on alleged incidents involving his two daughters, aged 11 and 12 years old. During the voir dire portion of jury selection, defense counsel questioned potential jurors in aid of making challenges for cause and exercising peremptory challenges. One potential juror was Juror 11. Juror 11 had identified himself as having worked for the Department of Human Services (DHS), which led to the following exchange with defense counsel:
"[DEFENSE COUNSEL]: * * * You work for DHS?
"JUROR 11: I did.
"[DEFENSE COUNSEL]: Did?
"JUROR 11: Yeah I-yes, I worked for the-I would say Social Service Specialist for child welfare for 17 years.
"[DEFENSE COUNSEL]: Okay. So-so we're going to have two complications here back to where I was talking about having personal experiences so-so extreme that they might distort your ability to perceive the evidence coming in. Do you have any concerns that-that-that either of those issues are going to affect you?
"JUROR 11: I am infinitely aware of the workings of CARES.[1 ] I have used CARES testimony in termination trials, including molestation trials. The only thing I did in my work with the * * * Department of Human Services was *287 termination trials between the time that I was with the department, so this is-
"[DEFENSE COUNSEL]: Now are you-
"JUROR 11: Including molestation trials.
"[DEFENSE COUNSEL]: Are you going to be able to hear testimony about the inner workings that you're already familiar with, and be able to listen to it with a critical or impartial perspective?
"JUROR 11: I would give weight to testimony of both the officer, the counselors, and the CARES provider.
"[DEFENSE COUNSEL]: Even though you recognize academically that-that would be-that would be partial?
"JUROR 11: Yes.
*164 "[DEFENSE COUNSEL]: And then do you have your own emotional connection to the topic?
"JUROR 11: That's correct.
"[DEFENSE COUNSEL]: And do you think you'll have that emotional reaction when listening to the evidence?
"JUROR 11: That's correct."
At the conclusion of that exchange, defense counsel moved to strike Juror 11 for cause. The trial court summarily denied the motion, and Juror 11 was seated on the jury.[2] A three-day trial ensued. The state's evidence included the testimony of a police officer, recordings of and testimony about the alleged victims' CARES interviews, and the testimony of the counselor for one of the victims. After deliberation, the jury returned nonunanimous guilty verdicts on all five counts. The court accepted the verdicts and entered a judgment of conviction. Defendant appeals.
We review the denial of a motion to strike a juror for cause for abuse of discretion. State v. Fanus , 336 Or. 63, 83, 79 P.3d 847 (2003), cert. den. , 541 U.S. 1075, 124 S.Ct. 2416, 158 L.Ed.2d 987 (2004). "Discretion *288 refers to the authority of a trial court to choose among several legally correct outcomes." State v. Romero, 236 Or. App. 640, 643, 237 P.3d 894 (2010) (internal quotation marks omitted). "If the trial court's decision was within the range of legally correct discretionary choices and produced a permissible, legally correct outcome, then the trial court did not abuse its discretion." Id. at 643, 237 P.3d 894 (citation omitted).
A criminal defendant has the guaranteed right to an impartial jury under both the state and federal constitutions. See Or. Const., Art. I, § 11 ("In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury * * *."); U.S. Const., Amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury * * *."). Consistent with that right, ORCP 57 D(1)(g), applicable to criminal trials through ORS 136.210(1), allows a criminal defendant to challenge any prospective juror based on actual bias. "Actual bias is the existence of a state of mind on the part of a juror that satisfies the court, in the exercise of sound discretion, that the juror cannot try the issue impartially and without prejudice to the substantial rights of the party challenging the juror." ORCP 57 D(1)(g). Actual bias "may be in reference to," inter alia , "either party to the action" or a "witness." Id .
The ultimate question with respect to actual bias is whether a prospective juror "can try the case impartially and follow the trial court's instructions." State v. Montez , 309 Or. 564, 594, 789 P.2d 1352 (1990). "[A]ctual bias does not arise out of the mere fact that the challenged juror holds certain views, but out of the fact that those views are likely to impair the juror's performance of his or her duties." State v. Barone , 328 Or. 68, 78, 969 P.2d 1013 (1998), cert. den. , 528 U.S. 1135, 120 S.Ct. 977, 145 L.Ed.2d 928 (2000). To determine whether a prospective juror's views "would prevent or substantially impair" performance of a juror's duties, the trial court must look "at the totality of the potential juror's voir dire testimony to discern whether it suggests the probability of bias." State v. Lotches , 331 Or. 455, 474, 17 P.3d 1045 (2000), cert. den. , 534 U.S. 833, 122 S.Ct. 82, 151 L.Ed.2d 45 (2001) (internal quotation marks omitted). Actual bias is a question of fact to be determined from all of the circumstances, *289 including the prospective juror's demeanor, apparent intelligence, and candor during voir dire . Barone , 328 Or. at 74, 969 P.2d 1013. The trial court's decision whether to exclude a juror for cause is "entitled to deference and will not be disturbed except for abuse of discretion." Id . That is especially so because the trial court has the advantage of observing the prospective juror. State v. Dalessio , 228 Or. App. 531, 536, 208 P.3d 1021 (2009). *165 Although our review is deferential, the trial court's discretion in deciding whether to dismiss a prospective juror for cause is not unbounded. State v. Carter , 205 Or. App. 460, 467, 134 P.3d 1078 (2006). In exercising its discretion, "the trial court must always be zealous to protect the rights of the accused as well as the legitimate interests of the state." Montez , 309 Or. at 575, 789 P.2d 1352. When a prospective juror has, during voir dire , "expressly called into question their ability to serve fairly and either continued to affirm that position or, at best, 'guessed' that they could 'try to be fair,' " we have held that it is an abuse of discretion to deny a motion to strike the juror for cause. State v. Vaughan-France , 279 Or. App. 305, 320-21, 379 P.3d 766, rev. den. , 360 Or. 697, 388 P.3d 711 (2016).
For example, in Carter , in response to questioning by defense counsel, a prospective juror, Henson, stated in voir dire that he "would have to hear a lot of good stuff" to change his predisposition that the defendant was guilty and that he did not think he could be fair. 205 Or. App. at 462-63, 134 P.3d 1078. Defense counsel moved to strike Henson for cause. Id . at 463, 134 P.3d 1078. The prosecutor sought to rehabilitate Henson, asking him whether he could follow an instruction to presume a defendant innocent until proved guilty beyond a reasonable doubt, to which Henson replied, "Yeah, I could probably do that." Id . The trial court then questioned Henson, explaining the duties of a juror and asking Henson whether he could set aside his personal feelings and follow the law. Id . at 463-64, 134 P.3d 1078. Henson replied, "I guess I could try." Id. at 464, 134 P.3d 1078. The trial court denied the defendant's motion to strike for cause, as well as a renewed motion, on the basis that Henson had "his own personal beliefs but he said that he can set them aside, and I believe him." Id. We reversed on appeal, explaining that, although "the trial court did remark that he believed *290 Henson when Henson said that he could set aside his personal beliefs," Henson "never said he could do so." Id. at 467, 134 P.3d 1078. He said only, "I guess I could try." Id . On that record, the court abused its discretion in denying the motion to strike Henson for cause. Id. at 468, 134 P.3d 1078.
In this case, defendant argues that it was an abuse of discretion for the trial court to deny his motion to strike Juror 11 for cause given Juror 11's partiality toward the prosecution. As defendant recognizes, Juror 11's employment history alone did not establish actual bias. However, when defense counsel asked Juror 11 whether he was concerned that his personal experiences were so extreme that they might distort his ability to perceive the evidence at trial, Juror 11 responded that he was "infinitely aware of the workings of CARES" and had "used CARES testimony in termination trials, including molestation trials." More significantly, when defense counsel followed up by asking Juror 11 whether he would be able to listen "with a critical or impartial perspective" to testimony about the "inner workings that you're already familiar with," Juror 11 responded that he "would give weight" to the testimony of the officer, the counselors, and the CARES provider, i.e. , the state's witnesses. When asked whether that was the case "even though you recognize academically that * * * that would be partial,"[3] Juror 11 responded, "yes."
The state argues that Juror 11's statements during voir dire were "unclear" and that we therefore should defer to the trial court's discretion in ruling on defendant's motion to strike for cause. The state cites the court's recognition in Barone , 328 Or. at 78, 969 P.2d 1013, that "it is in situations in which a potential juror's answers are contradictory or unclear that the trial court's discretion most meaningfully may come into play." In Barone , however, the court was addressing a situation in which the trial court had to determine, with the benefit of observation, "which of [a prospective juror's]
*291 seemingly contradictory expressions was *166 the best reflection of the juror's true state of mind." Id. at 79, 969 P.2d 1013. The trial court's exercise of discretion is frequently affirmed in such circumstances. See, e.g. , id. at 77-78, 969 P.2d 1013 (challenged juror expressed strong personal views in favor of the death penalty for aggravated murder, but then later "expressed a complete willingness to follow the court's instructions"); Montez , 309 Or. at 593, 789 P.2d 1352 (challenged juror initially said the odds were "three [or] four" out of 10 that he could not be fair and set aside his personal feelings, but then later said that he would be able to set aside his personal feelings and follow the trial court's instructions); Vaughan-France , 279 Or. App. at 320, 379 P.3d 766 (challenged juror said that she "did not think she could be fair," but later "vacillated and finally concluded by saying that she could set aside her personal feelings and decide the case on the law and facts").
The situation here was different. Like the challenged juror in Carter , 205 Or. App. at 467, 134 P.3d 1078, Juror 11 never said that he could be impartial. When asked if he could view the evidence impartially, Juror 11 responded that he would "give weight" to the testimony of the state's witnesses-the police officers, the counselors, and the CARES providers-and, when pressed whether that was the case "even though" he understood that that would be "partial," he said yes. Juror 11 did not make contradictory statements that the trial court had to reconcile to make a finding on actual bias. His only statements in voir dire were to the effect that he was partial toward the state's witnesses based on his prior employment experience.
Defense counsel's reference to "inner workings" injected some ambiguity into the question, which makes this a closer case than Carter . However, Juror 11's answer was sufficiently clear to call into question his "ability to serve fairly," Vaughan-France , 279 Or. App. at 320, 379 P.3d 766, and nothing else that Juror 11 said contradicted that impression. If anything, Juror 11's answer to the immediately preceding question-emphasizing his familiarity with CARES and his own work on termination trials, including molestation trials, when asked whether his personal experiences were so extreme that they might distort his view of the evidence at trial-and his answers to the next two questions-affirming that he had *292 an "emotional connection to the topic" and that he would have "that emotional reaction" to listening to the evidence-tended to "continue[ ] to affirm," id ., his biased position. At a minimum, they did not contradict it.[4] Of course, it is possible that, had the state or the trial court asked additional questions, Juror 11 might have made further, contradictory statements about his ability to be impartial, giving rise to a situation more like those in Barone and Vaughan-France . That did not happen, however, and we reject the state's suggestion that it was defense counsel's responsibility to ask "rehabilitative questions" and try to elicit a contradictory answer from Juror 11.
When a criminal defendant moves to strike a prospective juror for cause, the trial court must determine whether the prospective juror's personal views would prevent or substantially impair his or her ability to perform the duties of a juror and decide the case impartially. ORCP 57 D(1)(g); Lotches , 331 Or. at 474, 17 P.3d 1045. On this voir dire record, there is no evidence to support the trial court's conclusion that Juror 11 could serve as a fair and impartial juror. See Lotches , 331 Or. at 474, 17 P.3d 1045 ("The question, then, is whether there is evidence in the record to support the trial court's conclusion that Nunez could serve as a fair and impartial juror."); Barone , 328 Or. at 79, 969 P.2d 1013 (affirming denial of motion to strike for cause because there was "evidence in the record, even when considered in light of other, contradictory evidence, to support the *167 trial court's conclusion that Hinds could serve as a fair and impartial juror"). In Carter , we reversed and remanded for a new trial where the challenged juror grudgingly agreed that he could "try" to set aside his personal feelings and follow the law. 205 Or. App. at 464, 467-68, 134 P.3d 1078 ("I guess I could try"). Juror 11 did not even say that he would try. *293 The trial court abused its discretion when it denied defendant's motion to strike Juror 11 for cause. Failure to excuse a juror when there is a substantial probability of bias on the part of that juror is presumed to be prejudicial. Lambert v. Srs. of St. Joseph , 277 Or. 223, 231, 560 P.2d 262 (1977) ; see also ORCP 57 D(1)(g) (defining "actual bias" to mean that "the juror cannot try the issue impartially and without prejudice to the substantial rights of the party challenging the juror").
Reversed and remanded.

"CARES" refers to Child Abuse Response and Evaluation Services Northwest, which provides child abuse reporting and evaluation services in the Portland area. The state frequently offers evidence from CARES evaluations in child sexual abuse trials, as it did in this case.

The state concedes that defendant exhausted his peremptory challenges and does not argue that defendant should have used a peremptory challenge to remove Juror 11. See Lambert v. Srs. of St. Joseph , 277 Or. 223, 229, 560 P.2d 262 (1977) ("A party whose peremptory challenges have not been exhausted is not in a position to complain of the overruling of his challenge for cause to a juror who afterwards serves on the panel.").

In context, defense counsel was using "academically" in the sense of an intellectual understanding of something. In earlier questioning of another prospective juror, he also distinguished logical and rational thinking from emotional experience, and, in later questioning of the whole jury pool, he distinguished between saying something "academically" or "logically" and experiencing it emotionally.

Defendant argues that Juror 11's bias was further affirmed during trial when Juror 11 brought to the court's attention that he had recognized one of the state's witnesses, a mental health counselor named Talbert, outside the court-room. The prosecutor told the court that Talbert was "not here," at which point Juror 11 said, "Oh okay, then there's somebody I know, but I'm not sure who it is." The mere fact that the juror recognized a witness, if he did, does not establish actual bias. Moreover, defendant did not renew his motion to strike Juror 11 for cause at that time. We do not consider the Talbert issue relevant to our analysis, especially given the undeveloped record on it.