Argued and submitted January 26, reversed and remanded March 8, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JULIO CESAR VILLEDA,
*Defendant-Appellant.*

Washington County Circuit Court
20CR10192, 19CR08759;
A175679 (Control), A175680

526 P3d 1213

Defendant appeals from a judgment of conviction after a jury trial for one count each of endangering a person protected by an order under the Family Abuse Prevention Act and assault in the fourth degree constituting domestic violence, contending that the trial court abused its discretion in rejecting his for-cause challenge to a prospective juror based on actual bias, thereby causing defendant to use one of his limited number of peremptory challenges to exclude the juror. *Held*: The trial court abused its discretion. When, during *voir dire*, the prospective juror expressed a strong bias in favor of a victim of sexual abuse and an inclination to side with and credit the testimony of the alleged victim, the rehabilitation of the juror should have focused on that expressed bias, but it did not. Instead, the attempted rehabilitation addressed only the general question whether the juror thought she could follow the law and weigh the evidence as presented, to which the juror affirmatively replied. That cryptic acknowledgment was not an unequivocal assurance of an ability to set aside the expressed bias and be impartial. Therefore, there was insufficient evidence from which the trial court could conclude, in the exercise of its discretion, that the juror would be able to be fair and impartial.

Reversed and remanded.

Oscar Garcia, Judge.

Brett J. Allin, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

KAMINS, J.

Reversed and remanded.

**KAMINS, J.**

Defendant appeals from a judgment of conviction after a jury trial for one count each of endangering a person protected by an order under the Family Abuse Prevention Act (FAPA), ORS 163.192, and assault in the fourth degree constituting domestic violence, ORS 163.160(2). In his first assignment of error, he contends that the trial court abused its discretion in rejecting his for-cause challenge to prospective juror 155, based on actual bias, thereby causing defendant to use one of his limited number of peremptory challenges to exclude juror 155. In his second assignment, defendant contends that, in light of its error in disallowing the challenge for cause, the trial court erred in denying his request for additional peremptory challenges. We conclude that the trial court abused its discretion in rejecting defendant's for-cause challenge to juror 155, *see State v. Gollas-Gomez*, 292 Or App 285, 287, 423 P3d 162 (2018) ("We review the trial court's ruling on challenges for cause for an abuse of discretion." (Citing *State v. Fanus*, 336 Or 63, 83, 79 P3d 847 (2003), *cert den*, 541 US 1075 (2004).)), resulting in the loss of a preemptive challenge, and that the error was prejudicial. We therefore reverse defendant's convictions and do not address defendant's second assignment of error.

The relevant facts are primarily procedural and undisputed. In addition to the two charges on which he was convicted, defendant was charged with and acquitted of rape, sodomy, sexual abuse, and physical assault of his domestic partner, and with violating a FAPA restraining order. Before *voir dire*, the court asked preliminary questions of the prospective jurors. One question was whether any of the prospective jurors thought that their personal views might affect their ability to be fair and impartial in the trial. Prospective juror 155 raised her hand.

When defense counsel asked juror 155 why she might not be able to be impartial, juror 155 answered, "I have several close friends who have been sexually assaulted or raped," and "that would influence how I would participate in this." When asked to explain further, juror 155 stated:

"Well, I think generally when I hear about cases of sexual abuse or rape, I tend to give credibility to the survivor.

"And, so, *while I can still presume that he is innocent, I think my natural inclination is stand with the survivor.*"

(Emphasis added.) When defense counsel asked juror 155 if she could put that view aside, she answered, "I'm not sure if I could put it aside." Defense counsel asked juror 155 if she had "a reasonable doubt about your ability to be fair to [defendant] in this case," and she replied, "Yes." Defense counsel then asked the court to excuse juror 155 for cause.

The court instead spoke to the venire about the role of the jury. The court explained that the fact that a person has had experiences in life called to mind by the circumstances of the prosecution does not mean that the person cannot serve as a fair and impartial juror. The court then asked prospective juror 155:

"Do you think you could put those feelings aside, okay, and be neutral, fair when you hear the evidence here, okay, and then if it's creeping back, wait, I know I have these feelings, but I can't let them—no, no, I got to listen. I got to be fair to both sides, okay.

"*And then hear the evidence and then follow the law as I give it to you and just in essence, you know, to be fair. I mean, do you think you could do that as a—if you were a juror in this case?*"

(Emphasis added.) Juror 155 replied:

"*Yes. I think so. I think, again, that my natural inclination would be to lend more support to the victim survivor, but I think I could check my biases and my past understanding of these issues.*"

(Emphasis added.) At that point, the court decided to proceed.

The issue arose again when defense counsel asked the venire if anyone believed that a woman would not lie about being raped. Juror 155 again raised her hand and explained that her concern was "the same as what [she] previously explained." Defense counsel then asked the venire whether anyone agreed that "a woman would not lie about being raped," would not do so about someone with whom she was in a relationship, and would not lie about it in court. Juror 155 agreed with each statement. Defense counsel

asked juror 155 whether she would be a good juror, and she said that she thought she would be biased or "really emotional."

The court and prosecutor then inquired further:

"THE COURT:    Ma'am, so I—you know, we gave you a chance to hear other folks, okay? And, again, you know, you heard my definition of what we're looking for, everybody here, you know, to be fair and, you know, kind of keep your—those emotions aside if you can, all right.

"*So, do you think, ma'am, that you can do it in this case?*

"[JUROR 155]:    *I don't think I could keep my emotions to the side. Even just being in the room is just difficult.*

"THE COURT:    *And would those emotions not allow you to be fair to one side?*

"[JUROR 155]:    Yeah. I don't think they would allow me to be *fair.*"

(Emphases added.) At that point, juror 155 became tearful.

The court then allowed the state to make additional inquiry:

"[THE PROSECUTOR]:    Thank you. [Juror 155], I can see you're getting a little upset, and I totally understand. The good news is that we're not here to decide whether or not rape is a crime. There are certainly—it's a crime within the books, and there are other heinous crimes that definitely happen in the courthouse that we—would be hard to listen to. There's child abuse. There's murder. And nobody is asking you not to be a human when you're hearing that. *The question is when the judge tells you that, you know, you're to follow the law and to weigh the evidence as its presented, do you think that's something you could do?*

"[JUROR 155]:    *To weigh the evidence as it's presented?*

"[THE PROSECUTOR]:    *Mm-hmm. The evidence and the law as it's presented.*

"[JUROR 155]:    *Yes.*"

(Emphases added.)

Defense counsel again challenged juror 155 for cause, and the court denied the challenge. Defense counsel

then asked for additional peremptory challenges, and the court denied the request.

Defense counsel used a peremptory challenge for juror 155 and for five other prospective jurors. After the jury was selected, defense counsel stated that, if two more peremptory challenges had been available, they would have been used to excuse jurors 128 and 305.

After a jury trial, defendant was convicted of the two charges noted above and acquitted of rape, sodomy, sexual abuse, and physical assault of his domestic partner, and with violating a FAPA restraining order.

In his first assignment of error, defendant asserts that the trial court abused its discretion in rejecting his for-cause challenge to prospective juror 155, because *voir dire* showed that she was biased in favor of the victim and that bias was never properly rehabilitated. Defendant therefore had to use a peremptory challenge that he would have used against a different juror who was seated.

ORCP 57 D(1)(g), applicable to criminal trials through ORS 136.210(1), allows a criminal defendant to challenge any prospective juror for actual bias. It provides: "Actual bias is the existence of a state of mind on the part of a juror that satisfies the court, in the exercise of sound discretion, that the juror cannot try the issue impartially and without prejudice to the substantial rights of the party challenging the juror." Actual bias is a question of fact to be determined by the court from all of the circumstances, including the prospective juror's demeanor, apparent intelligence, and candor during *voir dire*. *State v. Barone*, 328 Or 68, 74, 969 P2d 1013 (1998), *cert den*, 528 US 1135 (2000).

The fact that a prospective juror has formed opinions about matters relevant to the case is not itself cause to exclude that juror based upon actual bias. *Id.* (so stating). "Rather, the test is whether the prospective juror's ideas or opinions would impair substantially his or her performance of the duties of a juror to decide the case fairly and impartially on the evidence presented in court." *Id.* (citing *State v. Montez*, 309 Or 564, 574, 789 P2d 1352 (1990)). To remove a juror for cause if it appears that the juror "has formed or

expressed an opinion upon the merits of the cause from what the juror may have heard or read, * * * the court must be satisfied, from all of the circumstances, that the juror cannot disregard such opinion and try the issue impartially." ORCP 57 D(1)(g). The "ultimate question with respect to actual bias is whether a prospective juror 'can try the case impartially and follow the trial court's instructions.'" *Gollas-Gomez*, 292 Or App at 288 (quoting *Montez*, 309 Or at 594).

Thus, the factual question for the trial court in response to defendant's for-cause challenge to juror 155 was whether, based on the totality of her testimony during *voir dire*, including her responses to rehabilitative questioning, the trial court was persuaded that juror 155 could set aside her biases such that they would not substantially impair the performance of her duties as a juror to decide the case fairly and impartially on the evidence presented in court. *See Fanus*, 336 Or at 83 (stating test). The trial court's discretionary ruling rejecting the for-cause challenge on that basis is entitled to deference, because it depends on findings of fact based on the court's direct observation of the prospective juror during the *voir dire* examination. *Id*. In reviewing the trial court's determination for an abuse of discretion, the question on appeal is whether there is legally sufficient evidence to support the court's finding that juror 155 could be fair and impartial. *State v. Lotches*, 331 Or 455, 474, 17 P3d 1045 (2000) ("The question, then, is whether there is evidence in the record to support the trial court's conclusion that [the prospective juror] could serve as a fair and impartial juror.").

When, as here, a juror has initially expressed bias during *voir dire*, it is possible for a juror to be "rehabilitated" through questioning by the court and the attorneys, such that the court can determine that the juror is capable of viewing the evidence without the expressed bias. "The purpose of rehabilitative questioning is investigation, not persuasion. It is to determine whether the juror is able and likely to set aside his views, not to persuade him to do so or to elicit pro forma answers to leading questions." *Lane County v. Walker*, 30 Or App 715, 722, 567 P2d 767 (1977). In exercising that investigative function to determine in its

discretion whether to allow a challenge for cause, the trial court must look "at the totality of the potential juror's *voir dire* testimony to discern whether it suggests 'the probability of bias.'" *Lotches*, 331 Or at 474 (citations omitted).

In *State v. Carter*, 205 Or App 460, 134 P3d 1078 (2006), we explained that rehabilitation occurs with evidence sufficient to allow the trial court to find that the juror has an unqualified and unequivocal commitment to serving fairly and without bias. We noted the Supreme Court's holding in *Fanus*, 336 Or at 84, that the trial court did not abuse its discretion in rejecting a challenge for cause when the prospective juror had given "unequivocal" assurances "that she was willing and would be able to require the state to prove defendant's guilt beyond a reasonable doubt and to base her decision upon only the evidence presented at trial." *Carter*, 205 Or App at 466 (quoting *Fanus*, 336 Or at 84). Quoting *State v. Compton*, 333 Or 274, 286, 39 P3d 833 (2002), we observed that the trial court does not abuse its discretion in denying a challenge for cause when there was evidence from which the trial court could find that the juror had affirmatively expressed her willingness to "perform the tasks of a juror in the manner required by law." *Carter*, 205 Or App at 467.

In contrast with both *Fanus* and *Compton*, where the prospective challenged jurors had unequivocally expressed their ability to decide the case fairly and impartially, the challenged juror's testimony in *Carter* did not reflect an unequivocal rehabilitation. The juror had

> "said without qualification that he did not think that he could be fair and that he did not think it fair to put him on the jury. In response to questioning from the prosecutor, he said that he 'probably' could follow the law notwithstanding his predispositions. In response to the trial court's further questioning, he said only, 'I guess I could try' to follow the law."

205 Or App at 467. We concluded that the trial court had abused its discretion in denying the for-cause challenge on the basis that the juror had been rehabilitated, because, after the juror had acknowledged that he did not think that he could be fair, the rehabilitation—consisting only of his

agreement with the prosecutor's question whether he could presume the defendant innocent until proven guilty beyond a reasonable doubt ("Yeah, I could probably do that." "I guess I could try.") had not been unequivocal.

Here, as in *Carter*, we conclude that juror 155's expressed bias was never rehabilitated. Initially during *voir dire*, in response to inquiries from defense counsel, the prosecutor, and the court, juror 155 expressed a strong bias: She explained that her natural inclination and her emotions would cause her to side with the victim of rape. After repeated inquiries by defense counsel and the prosecutor, and instruction by the court on the role of the jury, juror 155 responded affirmatively to the court's question whether she could be impartial and follow the evidence, answering, "Yes. I think so," and confirming that she thought she could check her biases. But then after hearing responses of other jurors, juror 155 again equivocated, agreeing with the statements that "a woman would not lie about being raped," would not do so about someone with whom she was in a relationship, and would not lie about it in court. She then became tearful and affirmatively stated, "I don't think [my emotions] would allow me to be fair." That equivocation and affirmative expression of bias itself required rehabilitation. However, during the only subsequent attempt at rehabilitation, the prosecutor asked a general question as to whether juror 155 thought she could follow the law and weigh the evidence as presented, and the tearful juror provided a single word answer: "Yes."

The court and the state's attempted rehabilitation of juror 155 focused generally on her ability to be fair and impartial and to consider the evidence and the law. But it did not focus on the source of juror 155's bias—her expressed belief that a woman would not lie about being raped. Where, as here, the excavated bias relates to a specific opinion, any rehabilitation needed to sufficiently address that opinion to permit the court to conclude that the juror could "disregard such opinion and try the issue impartially." ORCP 57 D(1)(g). As in *Carter*, and unlike in *Fanus* and *Compton*, the rehabilitation here did not provide unequivocal assurance of the juror's ability to set aside her belief that a woman would not

lie about a sexual assault and thus be impartial. Because there was never any rehabilitation directed to the witness's professed bias that she is more likely to believe the victim of a sexual assault, her later agreement with the statement that she could "follow the law" and "weigh the evidence" did not provide sufficient evidence to support the trial court's conclusion that the juror could disregard that bias.

We recognize the court's discretionary role in determining whether, despite equivocation, a juror will evaluate the evidence fairly and impartially. Particularly "in situations in which a potential juror's answers are contradictory or unclear *** the trial court's discretion most meaningfully may come into play." *Barone*, 328 Or at 78. However, "[a]lthough our review is deferential, the trial court's discretion in deciding whether to dismiss a prospective juror for cause is not unbounded." *Gollas-Gomez*, 292 Or App at 289 (citing *Carter*, 205 Or App at 467). Here, both of juror 155's cryptic acknowledgments that she could be impartial, weigh the evidence, and follow the court's instructions, were accompanied by a reiteration of her bias, which had been expressed at the outset of *voir dire*, that, when faced with an allegation of rape or sexual abuse, she would "tend to give credibility to the survivor." Thus, the rehabilitation accomplished its investigative function—it effectively uncovered information about the source of juror 155's bias. However, in order to allow the trial court to determine that juror 155 could disregard that bias and be fair and impartial, the rehabilitation must have explicitly addressed the bias, and it did not. In light of prospective juror 155's strongly expressed bias throughout *voir dire* regarding her inclination to side with and credit the testimony from the victim, and in the absence of an unequivocal assurance of an ability to set that inclination aside, there was insufficient evidence from which the trial court could conclude, in the exercise of its discretion, that juror 155 would be able to be fair and impartial.

In sum, in the face of a juror's expressed actual bias, any rehabilitation must be unequivocal in addressing the source of that bias. Because the rehabilitation here was neither unequivocal nor addressed to the specific bias that was uncovered, we decline to defer to the trial court's judgment,

and we conclude that the trial court abused its discretion in rejecting defendant's for-cause challenge to juror 155.

As the state points out, under the Oregon Constitution, Article VII (Amended), section 3, a conviction may not be reversed in the face of procedural error in the absence of prejudice. Defendant contends that, although juror 155 did not serve on the jury, the trial court's error nonetheless was prejudicial, because defendant was forced to waste a peremptory challenge to exclude juror 155, which effectively deprived defendant of a peremptory challenge to which he was entitled under ORS 136.230(1) (defendant in noncapital case is entitled to six peremptory challenges).

The state notes the well-established rule that a constitutional claim that the trial court erred in denying a for-cause challenge does not provide a basis for reversal on appeal—even if that challenge potentially had merit—when that prospective juror ultimately did not sit on the jury. The rule applies even if the defendant had to exercise a peremptory challenge to remove the juror. *Ross v. Oklahoma*, 487 US 81, 88, 108 S Ct 2273, 101 L Ed 2d 90 (1988) (loss of a peremptory challenge is not a violation of the constitutional right to an impartial jury "so long as the jury that sits is impartial"); *Barone*, 328 Or at 73 (same); *see also State v. Mannix*, 263 Or App 162, 172, 326 P3d 1236 (2014) ("A long and unbroken series of Oregon appellate cases establishes that '[t]he erroneous overruling of a good challenge for cause, thereby compelling the use of a peremptory challenge, is not prejudicial error where it does not appear that the challenger was compelled to accept an objectionable juror.'" (Quoting *State v. Megorden*, 49 Or 259, 263-64, 88 P 306 (1907).)); *State v. Wright*, 294 Or App 772, 431 P3d 471 (2018), *rev den*, 364 Or 294 (2019) (same). Thus, the need to use a peremptory challenge to excuse a juror who should have been excused for cause does not generally constitute prejudice. The state further responds that, even assuming that there could be prejudice from defendant's inability to peremptorily challenge a juror who was seated, that contention is speculative, because defendant has not offered an explanation of how he might have been prejudiced by the presence of that juror.

We disagree. Defendant's argument on appeal does not depend on a showing of prejudice, beyond the loss of a peremptory challenge to which he was statutorily entitled and that he contends he would have used to excuse a different juror. As defendant correctly argues, prejudice in that context is presumed. In *State Highway Commission v. Walker et ux*, 232 Or 478, 485, 376 P2d 96 (1962), the Supreme Court held that, "since there is no way for a party deprived of his peremptory challenge to show prejudice, there is no sanction to enforce his right unless violation thereof is adjudged automatically prejudicial." (Citation omitted.) The court in *Walker* noted the requirement of ORS 19.125(2) (now numbered ORS 19.415) "withhold[ing] reversal except for 'error substantially affecting the rights of the parties,'" but concluded nonetheless that, "Unless an error such as the one just noted results in reversal, the right that was given by the statute is an empty one. We believe that the error should be deemed prejudicial automatically." *Walker*, 232 Or at 485. *See Baker v. English*, 324 Or 585, 592 n 6, 932 P2d 57 (1997) (adhering to but limiting to the peremptory challenge context *Walker*'s "narrow exception to the general principle that a party's rights ordinarily are not substantially affected by an error that likely did not affect the outcome of the case"). If prejudice is presumed from the loss of a peremptory challenge in a civil case, the presumption is all the more applicable in the criminal context, where the stakes are higher.

It is true that the precise issue here—whether the denial of a peremptory challenge *in the criminal context* constitutes error *per se*—has not been directly addressed by the Supreme Court. But the Supreme Court has indirectly addressed the issue in *Montez*, 309 Or at 577, where the court was faced with the identical procedural scenario—a trial court's rejection of a for-cause challenge to a juror, requiring the defendant to use a peremptory challenge on the juror. In *Montez*, the trial court had rejected the defendant's for-cause challenge to Juror Boley, and the defendant challenged that ruling on appeal. The Supreme Court did not analyze the issue of prejudice beyond identifying as "prejudice" that the need to use a peremptory challenge had resulted in the loss of a peremptory challenge against a different juror who was seated. *Id.* ("Because Boley did

not serve on the jury, the only 'prejudice' to defendant was that defendant had no remaining peremptory challenge to later excuse [a different juror], who did serve on the jury."). Thus, it would seem that the court recognized as prejudicial the circumstances like those here. The court in *Montez* went on to address the merits of the defendant's challenge to the trial court's rejections of his for-cause challenge to Boley, concluding that there had been no abuse of discretion. *Id.* at 592. Justice Gillette dissented, explaining that Boley should have been excused for cause, and concluding for that reason that the defendant had not received a fair and impartial jury. *Id.* at 617 (Gillette, J., dissenting).

Thus, it would seem that, if presented squarely with the issue, the Supreme Court would conclude that prejudice arises from the erroneous rejection of a for-cause juror challenge if, as here, the defendant makes a record that a lost peremptory challenge would otherwise have been used against a juror who sat. *Cf. State v. Berliner*, 232 Or App 539, 222 P3d 744 (2009), *rev den*, 348 Or 291 (2010) (in identical posture, concluding no prejudice was shown where defendant did not argue that jury empaneled was not impartial).

Here, the consequence of the trial court's rejection of defendant's for-cause challenge to prospective juror 155 was to force defendant to use a peremptory challenge, effectively reducing the number of peremptory challenges available for other prospective jurors. And defendant made a record that, had an additional peremptory challenge been available, he would have used it against a juror who was seated. We conclude that defendant has established prejudice within the meaning of Article VII (Amended), section 3. *Montez*, 309 Or at 577 (identifying as "prejudice" the trial court's failure to allow a juror to be challenged for cause, resulting in the loss of the ability to use a peremptory challenge against a different juror who was seated); *Walker*, 232 Or at 485 (holding that the denial of a statutorily provided peremptory challenge constitutes prejudice *per se*). We therefore reverse defendant's convictions.

Reversed and remanded.