Argued January 6, reversed and remanded for new trial February 17, petition for rehearing denied March 15, 1977

LAMBERT, *Appellant,*
*v.*
SISTERS OF ST. JOSEPH OF PEACE et al,
*Respondents.*

LAMBERT, *Appellant,*
*v.*
SISTERS OF ST. JOSEPH OF PEACE et al,
*Respondents.*
(Nos. 74 3541, 74 3542, SC 24446)
560 P2d 262

J. P. Graff, Eugene, argued the cause for appellants. With him on the briefs were Gildea & McGavic, Eugene.

Richard Bryson, Eugene, argued the cause for respondents. With him on the brief were Calkins & Calkins and Bryson & Robert, Eugene.

Before Denecke, Chief Justice, and Tongue, Linde and Bradshaw, Justices.

BRADSHAW, J. (Pro Tempore)

**BRADSHAW, J.,** pro tempore.

These are two separate actions for damages based on negligence of the defendants in providing medical treatment to plaintiff Guy Rex Lambert. The plaintiff Mr. Lambert seeks to recover for personal injury. The plaintiff Mrs. Lambert seeks to recover for loss of consortium and personal service. The defendants are the same in both cases. The cases were consolidated for trial by jury and a verdict in favor of the defendants was returned in each case.

The plaintiffs in each case appeal claiming two assignments of error by the trial court.

The plaintiffs first assign as error the trial court's denial of plaintiffs' challenge for cause to juror Brandt after plaintiffs' peremptory challenges had been exhausted.

The plaintiff Mr. Lambert was admitted to Sacred Heart General Hospital on July 30, 1972, as an emergency room outpatient for treatment of a laceration with partial amputation of his left thumb. The defendant Dr. Degge treated Mr. Lambert for this injury at that time and instructed defendant Carol Vetter, a registered nurse, to administer certain tetanus shots to Mr. Lambert. The plaintiffs' claims are based upon the theory that the shots or injections were administered in a negligent manner and that as a result thereof Mr. Lambert suffered a neuropathy of the nerves of his right arm and shoulder. The plaintiffs claim that if these injections had been administered with due care and proper practice, they would not have resulted in injuries to Mr. Lambert, a fact within common knowledge of the medical profession and the public. Such allegation constitutes a pleading of the theory of res ipsa loquitur as to negligence and causation.

At the trial of the cases and during the process of selecting a jury and at a time when plaintiffs had exhausted their peremptory challenges, Bruce C.

[ 225 ]

Brandt was called as a prospective juror. During examination of Brandt he testified that he knew the defendant Dr. Degge and that they had a speaking acquaintance, that his mother had worked as a registered nurse for Dr. Degge's clinic for a period of three to five years up to a time six years prior to the trial, that Dr. Degge treated Brandt for a fractured leg in 1963, that in 1971 Brandt was treated for another fracture by one of the other doctors at the clinic, and Dr. Degge may have acted in an advisory capacity. There was no testimony elicited from Brandt as to whether or not he considered Dr. Degge to still be his personal physician or if he would return to Dr. Degge for any physical problems that might arise. Brandt knew of no facts involved in the case, either directly or indirectly.

The voir dire of Brandt was commenced by the court. It is obvious from the record that the court had previously explained the general issues of the case to the jury panel in attendance. The court in its initial questioning of Brandt elicited the following testimony:

"THE COURT: Do you know Dr. Degge personally?

"JUROR BRANDT: Yes, I do.

"THE COURT: Is this a present relationship, doctor-patient?

"JUROR BRANDT: No.

"THE COURT: Would you describe what kind of relationship it is?

"JUROR BRANDT: Well, my mother used to be employed for the Orthopedic Fracture Clinic and is a registered nurse. And Dr. Degge, I knew from that relationship, and he also set a—casted my leg in a skiing accident.

"THE COURT: How long ago was that?

"JUROR BRANDT: This was in, roughly, '63.

"THE COURT: Now, is there anything about that relationship you think might affect your thinking?

"JUROR BRANDT: Well, I, I think Dr. Degge is a very good doctor, but as far as that, you know, that would, that would bother me.

"THE COURT: Well, let me ask you this: Would you give any more credence to Dr. Degge's testimony than you would to any other witness?

"JUROR BRANDT: I don't, I don't believe I would."

At a subsequent point the court further inquired of Brandt as follows:

"THE COURT: Any reason you can think of that you could not act as a fair and impartial juror?

"JUROR BRANDT: No.

"THE COURT: Would you follow the instructions I give in regard to the law?

"JUROR BRANDT: Yes."

Thereafter, plaintiffs' attorney questioned Brandt as to his qualifications, as follows:

"Q    Well, now, do you think it might be difficult for you to find, award a verdict against him?

"A    Well, the—I don't think it would be difficult. It would have to be, you know, like if your people could prove there was a negligence, but, like I said before, my dealings with him before, I'm convinced he is a very good doctor, so you might—

"Q    Excuse me, go ahead.

"A    —you might have a harder time convincing me because I have had this association.

"Q    That's what I mean.

"A    Before.

"Q    The conviction that you have got of his?

"A    If the proof was there, you know, there wouldn't be any problem, but—

"Q    All right.

"A    —but what I am trying to say, I just— I am saying I could make the decision, but, you know, the proof would have to be there. The evidence would have to be there."

Thereafter, Brandt responded that he thought Dr. Degge was a good doctor. The plaintiffs' attorney explained that the plaintiffs did not contend that Dr. Degge was not a good doctor but only that on this occasion he made a mistake. Brandt, in reply, conceded that all humans can make mistakes and that Dr. Degge, as a good doctor, could make a mistake. Brandt

then explained that in order for him to find for the plaintiff it would not be necessary for plaintiffs to prove Dr. Degge was not a good doctor. Concluding this discussion, Brandt was asked and responded as follows:

"Q  All right. Because of your relationship with Dr. Degge, and your, and your ideas, you know, about his competence as a doctor so far, would you prefer to not be on this jury?

"A  Well, it is—would be difficult, but I wouldn't renege just for that fact. I have an obligation. I believe it is up to yourself and the other attorneys present to decide if they want me to sit on this jury. And I am trying to be fair."

At another point in answer to his frame of mind, Brandt testified:

"A  Well, it's—I don't think you really know what my frame of mind is."

Plaintiff's attorney, as a hypothesis, told Brandt that Dr. Degge's testimony would be opposed to testimony of other doctors and inquired of Brandt if he would have a problem concluding that Dr. Degge was wrong. Brandt replied generally to the effect that he could not determine that just because he had not yet heard any testimony. At a later time plaintiffs' attorney asked Brandt again if he was confident that he could give plaintiffs a fair trial. Brandt responded that he could.

Plaintiffs contend that the voir dire examination of juror Brandt disqualified him for actual bias. ORS 17.135 provides:

"Particular causes of challenge are of two kinds:

"(1) Implied bias, which is such a bias as, when the existence of the facts is ascertained, in judgment of law disqualifies the juror.

"(2) Actual bias, which is the existence of a state of mind on the part of the juror, in reference to the action, or to either party, which satisfies the court, in the exercise of a sound discretion, that he can not try the

[ 228 ]

issue impartially and without prejudice to the substantial rights of the party challenging."

We are not concerned here with implied bias, nor are we concerned with the state of mind of the juror in reference to the cause of action. The discretion exercised by the trial judge is in regard to the jurors' state of mind in reference to the party defendant Dr. Degge.

■ The exercise of sound discretion under this statute will not be disturbed in the absence of a finding of a manifest abuse of that discretion by the trial court. *State v. Armstrong,* 43 Or 207, 73 P 1022 (1903); *Kumli v. Southern Pacific Co.,* 21 Or 505, 28 P 637 (1892); *Casciato v. Oregon Liquor Control Com.,* 181 Or 707, 185 P2d 246 (1947); *Vale v. Campbell,* 123 Or 632, 263 P 400 (1928). The parties agree with this rule.

■ In reviewing the exercise of discretion we must give great weight to the fact that the trial judge had the advantage of having the challenged juror before him and an opportunity to observe his demeanor, apparent intelligence and candor, all of which are important in determining bias.

Innumerable court decisio ⌐ covering a wide spectrum of jurisdictions contain ⸲ ⸲ariety of definitions of the term "abuse of discretion." It is difficult to formulate a concise and accurate definition from these cases for the reason that there is such a factual divergency and "judicial discretion" is involved in many different circumstances. The plaintiffs suggest a definition from Bouvier's Law Dictionary, which defendants accept in their brief:

> "Abuse of discretion. A discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence."

■ A party whose peremptory challenges have not been exhausted is not in a position to complain of the overruling of his challenge for cause to a juror who afterwards serves on the panel. *State v. Humphrey,* 63 Or 540, 128 P 824 (1912); *Mount v. Welsh,* 118 Or 568, 247 P 815 (1926).

■ It is not enough if a juror believes that he can be impartial and fair. The court in exercising discretion must find from all of the facts that the juror will be impartial and fair and not be biased consciously or subconsciously. A mere statement by the juror that he will be fair and afford the parties a fair trial becomes less meaningful in light of other testimony and facts which at least suggest the probability of bias. The court in exercising discretion must be convinced that a probability of bias of the juror does not exist. The test of a juror's disqualification is the probability of bias or prejudice as determined by the court. *Mount v. Welsh, supra; Johnson v. Reynolds,* 97 Fla 591, 121 So 793 (1929); *Kendall v. Prudential Insurance Co. of America,* 327 SW2d 174 (Mo 1959).

■ It is elementary that the parties to an action are entitled to try their issues before impartial jurors. An impartial juror is one whose state of mind is such at the commencement of the trial that he favors none of the litigants more than the other, and that he will decide the cause only by a conviction based upon the evidence and law of the case. Oregon Constitution, Art VII (Amended), § 3; ORS 17.033; *Lilley v. Gifford Phillips, Inc.,* 210 Or 278, 310 P2d 337 (1957).

■ The right to trial by fair and impartial jurors is a matter which is and should be guarded zealously by the courts, and the courts should guarantee that juries consist of impartial persons. *Walker v. Griffin,* 218 Or 613, 346 P2d 110 (1959), *overruled on other grounds Beglau v. Albertus,* 272 Or 170, 536 P2d 1251 (1975); *Crawford v. United States,* 212 US 183, 29 S Ct 260, 53 L Ed 465 (1909). Referring to the fairness of the system of trial by jury, the United States Supreme Court noted in *Crawford*:

> "* * * To maintain that system in the respect and affection of the citizens of this country it is requisite that the jurors chosen should not only in fact be fair and impartial, but that they should not occupy such relation to either side as to lead on that account to any doubt on that subject. * * *" 212 US at 195.

■ Initial reactions or answers given in voir dire without undue debate and confinement of issues should be afforded much greater weight in determining Brandt's true frame of mind. Early answers or reactions more truly indicate the juror's frame of mind as opposed to later generalized statements that the juror would be fair. Special emphasis must be placed on Brandt's response to the court early in his examination to the effect that he thought Dr. Degge was a very good doctor and that that would "bother" him. Later, under questioning by plaintiffs' attorney in regard to his relationship to Dr. Degge affecting plaintiffs' burden of proof, Brandt concluded that the plaintiffs might have a harder time convincing him because he had had this association with Dr. Degge. This testimony should be given particular significance in light of the notice to the trial court from the pleadings that plaintiffs intended to proceed on the theory of res ipsa loquitur.

The voir dire examination, taken as a whole, convinces this court that there was a substantial probability of bias on the part of juror Brandt and therefore the plaintiffs were deprived of the right to have their issues determined by an impartial juror. It follows, therefore, that we hold that the trial court's denial of the plaintiffs' challenge for cause was a manifest abuse of the discretion vested in the court pursuant to ORS 17.135(2). The failure to allow the juror to be excused for cause is presumed to be prejudicial to the plaintiffs and therefore this case must be reversed and remanded to the court below for a new trial.

The plaintiffs' second assignment of error is directed to the trial court's receiving in evidence, over objection, defendants' Exhibit A. This was an admission form record which had been removed from the other hospital records and separately marked as a defendants' exhibit and offered under the Uniform Business Records Act. ORS 41.690. The objection was to the relevance on probative value of the exhibit.

[ 231 ]

The state of the record at time of the offer and acceptance was somewhat unusual. It is unnecessary for this court to decide this question in this opinion, since upon retrial of this case, the foundation, timing and circumstances existing at the time of the offer could be entirely different from that reflected in this record.

Reversed and remanded.