Argued and submitted February 9, affirmed March 8, 2023

Matthew Andrew HARTT,
aka Matthew Hartt,
*Plaintiff-Appellant,*

*v.*

CITY OF KEIZER
and City of Salem,
*Defendants-Respondents,*

*and*

MARION COUNTY et al.,
*Defendants.*

Marion County Circuit Court
18CV29560; A178541

526 P3d 1224

Plaintiff appeals from a judgment for defendants after a jury trial on plaintiff's negligence claim seeking damages of $7.5 million for personal injuries he allegedly suffered when he was bitten by a police dog during his arrest. Plaintiff asserts in a single assignment of error that the trial court abused its discretion in rejecting his for-cause challenge to one of the jurors who was seated who had expressed skepticism as to plaintiff's damages. *Held*: The trial court did not abuse its discretion in rejecting the for-cause challenge. After the juror expressed skepticism as to the amount of the requested damages, the court provided education and questions that were specifically directed to the source of the juror's expressed skepticism. The juror's responses to those targeted questions provided sufficient evidence from which the trial court could find that, despite her expressed skepticism of a $7.5 million claim for a dog bite, the juror could be fair and impartial and consider plaintiff's claim based on the evidence and the trial court's instructions.

Affirmed.

J. Channing Bennett, Judge.

William J. Macke argued the cause and filed the briefs for appellant.

Aaron P. Hisel argued the cause for respondent City of Keizer. Also on the brief was Elizabeth A. Jones.

Jennifer M. Gaddis argued the cause and filed the brief for respondent City of Salem.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Plaintiff brought this negligence action against defendants City of Keizer, Marion County, and the City of Salem,[1] seeking damages of $7.5 million for personal injuries that he allegedly suffered when he was bitten by a police dog during his arrest. Plaintiff appeals from a judgment for defendants after a jury trial, asserting in a single assignment of error that the trial court abused its discretion in rejecting his for-cause challenge to one of the jurors who was seated. We conclude that the court did not abuse its discretion in rejecting the for-cause challenge, *see State v. Gollas-Gomez*, 292 Or App 285, 287, 423 P3d 162 (2018) ("We review the trial court's ruling on challenges for cause for an abuse of discretion." (Citing *State v. Fanus*, 336 Or 63, 83, 79 P3d 847 (2003), *cert den*, 541 US 1075 (2004).)), and therefore affirm the judgment for defendants.

Before beginning *voir dire*, the court gave the prospective jurors some background on the case:

> "The plaintiff in this case is Matthew Andrew Hartt; the defendants are the City of Salem and the City of Keizer. On August 8, 2016, defendants City of Salem and City of Keizer attempted to contact the plaintiff to arrest him on outstanding warrants. Plaintiff was staying in a motorhome [in] Keizer, Oregon. Defendants attempted to get the plaintiff to exit the motorhome for over two hours without success. Defendants informed plaintiff over a loudspeaker that he had outstanding warrants for his arrest and warned him that the K-9 unit could be deployed if he did not exit the motorhome. Plaintiff did not exit the motorhome. Defendant subsequently entered the motorhome to arrest plaintiff and plaintiff was bitten by the K-9 unit. Plaintiffs bring this—plaintiff brings this lawsuit alleging that law enforcement officers from the City of Salem and the City of Keizer were negligent in not conducting an accurate and complete threat assessment, and deploying a K-9 under circumstances that did not warrant it, and failing to maintain control of the K-9 and in failing to intervene when the K-9 officer deployed the dog.

---

[1] Marion County has since been dismissed, and that dismissal is not challenged by plaintiff.

"The City of Salem and the City of Keizer deny that the intentional use of the K-9 under the circumstances to secure plaintiff's arrest was negligent. They counter the plaintiff was negligent and the cause of his injuries by failing to surrender and show his hands despite repeated warnings. Plaintiff seeks $7.5 million for his injuries."

The court then asked the prospective jurors if anyone felt "that your personal views concerning this type of case might affect your ability to be fair and impartial[.]" One juror raised his hand and was excused. Juror 103 did not raise her hand. The court then asked the prospective jurors if anyone could not serve for a four-day trial. Three jurors raised their hands and were excused. When the court asked if anyone else needed to be excused from a four-day trial, juror 103 raised her hand and explained that she was starting a new job and needed to attend a week of remote training. The court acknowledged juror 103's burden but declined to excuse her.

Later in *voir dire*, juror 103 asked to be reminded of plaintiff's requested damages. On being told that the pleaded amount was $7.5 million, juror 103 stated:

"I probably have a problem with that."

Thus began a lengthy discussion among the City of Keizer's attorney, the court, plaintiff's attorney, and juror 103. Aaron Hisel, the city's attorney, asked juror 103 to explain further, and she stated:

"Just because if someone has warrants out for their arrest, they refuse to come out, the dog does its job what it's trained to do, and it just doesn't seem right to me to award that huge of an amount for a dog bite when it is taxpayer money. I know, I mean, it's like, that—that's just an obscene number. I can't even fathom that amount of money. I feel like I see that so much that it's just an abuse of this— this whole process, is just, really? Is that much money really necessary *** for using what seems to me at least from the facts that I have, legal use of force since someone's resisting arrest. So it's the amount of money I have serious problems."

Following up, the city's attorney inquired:

"And I appreciate you being candid and raising your hand, especially in response to such an open-ended question about it. The follow-up question * * * is going to be: With what you understand right now and where you're sitting and what you're voicing, if the facts supported, whether it was a nickel or a million dollars or $7.5 million, right? It's not because he asked for 7.5 that he's entitled to every cent of it, even if he were to win, right?"

The city's attorney then asked, "But if the facts supported a thousand dollars, would you be okay with that?" Juror 103 responded: "It would be difficult."

The court then interjected and explained that it would be a question for the jury whether the police were negligent in the deployment of the dog and, further, that a plaintiff is required to prove damages and "almost always" alleges "a very high number" to avoid the risk of being unable to recover an amount awarded by the jury that was more than the amount pleaded, as is the rule in state court in Oregon. The court further illustrated that it had overseen cases where juries awarded more than the plaintiff asked for and the court was forced to reduce the award to the amount pleaded. The court then brought up juror 103's response relating to damages of $1,000 and asked:

"[I]s your feeling so strong that regardless of what the evidence is you just don't think you can do it[?] If that's the case, then you're probably not right to sit on the jury. I mean, frankly. Okay? But if it is, well, no, I mean, I'm assuming things that have been talked about and it goes all this way then maybe I wouldn't, but I can listen to the evidence and decide it based on the evidence, then you can.

"* * * * *

"So that's the question. Is * * * you're feeling so strong that you cannot listen to the facts and make your own independent determination? Okay? And again, it's what we've been talking about all morning, you don't have to separate your experiences in life and your feelings, but you have to listen to the facts and you haven't heard any yet."

Juror 103 responded:

"Yeah, I'm—I want to be as unbiased as possible. I just know as soon as I heard that amount and for what

it was—it was, it would be very difficult to convince me that—that they were in the wrong."

The court was about to excuse juror 103 for cause but then allowed the city's attorney to follow up:

"[Y]ou understand you have not received any evidence yet. And so it is your testimony, even if the evidence were—you're not—you're not saying that if the evidence was the police were right, you would make that call, and if the evidence was convincing to you that the police were wrong, you would make that call too, right? The only reason you raised your hand was just because when you heard the amount it seemed obscene. He's sitting here, he's alive, you know, that's what you were trying to communicate, correct? I haven't heard you say that you don't believe that if the facts came one way or the other, you would make the wrong call because of these biases that you've heard."

Juror 103 answered:

"I do want to hear evidence. I'm not stating that no evidence could convince me that, you know, the dog wasn't excessive. It could convince me it might have been, it might have been he didn't hear, it might have been all these things. But I think I've heard and—and just kind of witnessed so many of these kinds of things where it just—it seems like these little trials to get these little—but then they become huge amounts of money for—for these little minor inconsistencies. And you didn't follow the law to the letter or something, and it just seems, like, to me I have a bias against people who bring these aggressions to the state to police departments. *** It seems to me as a way of just getting money."

The court explained, "Well our system compensates civil wrongs with money. That's just the system." And juror 103 responded:

"And that's fine, that's fine, that's fine. I think—I think the amount is really what, to me, made it out like it doesn't seem like a justice thing, it seems like you want to get money; and money's an issue, like a dog bite, seems like it's open for these kinds of proceedings."

The conversation continued:

"THE COURT:   Well, so, here. I told you at the beginning that part of the job of a jury is community standards.

So it's a two-part instruction here. You will be asked to find, one, were the defendants negligent? Okay? Totally separate from money. Can you find, if you heard the evidence and found them negligent, or could you find them negligent? I mean, that's the question, listen to it and if evidence supports negligence, would you find negligence? Could you?

"JUROR NO. 103:    Sure.

"THE COURT:    All right. And then the second question is, what is the damage that flows from the negligence? Say it's—they can prove, I don't know what the medical bills are, maybe there's surgeries, whole bunch of something, stuff that's really expensive; I'm not going to say a number, but a high number. Could you award a high number after negligence if you heard evidence that supported that?

"JUROR NO. 103:    Sure.

"THE COURT:    Okay. Then I'm not going to excuse her for cause. That's all we're asking. They need to know your bias, we all have them, but the answer is, can you listen to the evidence and make a determination, negligent, not negligent, and then make an award of damages if you find negligence based on the evidence. That's all we are asking you to do. Okay? She's nodding her head, yes."

Plaintiff's counsel, Mr. Macke, then asked if he could follow up:

"MR. MACKE [plaintiff's counsel]:    May I ask?

"THE COURT:    Mr. Macke, go ahead.

"MR. MACKE:    So I feel like I've heard you say two different things. I feel like I've heard you say, given the circumstances, I don't think you should get any money because it gives a bad incentive to maybe plaintiff's lawyers to file lawsuits, and try to get money and get money for their clients, in a circumstance where the taxpayers pick up the bill and you have someone who is noncompliant with a police order. I've heard you say that, in a nutshell, right? But then I heard you say if—if you hear the evidence and decide that the police are negligent and you hear some number, you know, my client has a million dollars of medical bills, if you find negligence, you can then award them a million dollars in medical bills. But those don't really seem consistent.

"JUROR NO. 103: Well, I mean, there are exceptions to every rule. I mean, as a general, this is what I usually see and generally, I—yeah. I—I think it's kind of excessive, usually. But I'm not saying there's no exceptions to the rule. I'm not saying that some people don't, in fact, deserve damages. I'm not—there are exceptions, so if he's an exception, I'm willing to make these exceptions.

"MR. MACKE: Okay. But it's not an exception that you accept as an exception. It's whether or not plaintiff proves negligence and proves damages. Do you understand the difference there?

"JUROR NO. 103: Yes, that would be the exception. If negligence is proven, then it would be something, where, okay. Then—then, this is he's allowed to do this. It doesn't seem like it's just getting something where he shouldn't.

"MR. MACKE: Okay. And so now you feel like your— you will be able to do that. You'll be able to apply the negligence instruction.

"JUROR NO. 103: Yeah, I—I'm just bringing out my bias so it's there, but I—I can use logic and I'd be able to listen to the evidence.

"MR. MACKE: Right. But the question is whether or not your bias pulls at your logic. Because if your logic is necessarily affected by your bias, then you're probably not a good *** juror for this trial, right?

"JUROR NO. 103: And I—I mean, I would say I would attempt, but if you would really want to know bias, there probably is a strong bias where I'm more likely to not award damages.

"MR. MACKE: Okay. I think this juror's appropriate for cause.

"MR. HISEL: I don't think any of that, Judge, (indiscernible) we just had, Your Honor.

"THE COURT: Well, I'm not going to strike her for cause at this time."

Plaintiff had used all of his peremptory challenges. Thus, juror 103 was seated. The jury selected her as its foreperson and, after trial, returned a defense verdict. On appeal, plaintiff challenges the trial court's denial of the for-cause challenge to juror 103 based on bias.

As an initial matter, we reject the cities' argument that plaintiff failed to preserve his challenge to the trial court's ruling. The extensive discussion above shows that the trial court and defendants understood that plaintiff's for-cause challenge to juror 103 related to bias in light of her comments. *See State v. Clemente-Perez*, 357 Or 745, 752, 359 P3d 232 (2015) ("The primary purposes of the preservation rule are to allow the trial court to consider a contention and correct any error, to allow the opposing party an opportunity to respond to a contention, and to foster a full development of the record.").

But we conclude that the trial court did not abuse its discretion in rejecting plaintiff's challenge. We addressed the standard for our review of a trial court's ruling rejecting a for-cause juror challenge based on bias in *State v. Villeda*, 324 Or App 502, 526 P3d 1213 (2023). As we explained there, ORCP 57 D(1)(g), applicable to criminal trials through ORS 136.210(1), allows a criminal defendant to challenge any prospective juror for actual bias. It provides:

> "Actual bias is the existence of a state of mind on the part of a juror that satisfies the court, in the exercise of sound discretion, that the juror cannot try the issue impartially and without prejudice to the substantial rights of the party challenging the juror. Actual bias may be in reference to: the action; either party to the action; the sex of the party, the party's attorney, a victim or a witness; or a racial or ethnic group of which the party, the party's attorney, a victim, or a witness is a member, or is perceived to be a member. A challenge for actual bias may be taken for the cause mentioned in this paragraph, but on the trial of such challenge, although it should appear that the juror challenged has formed or expressed an opinion upon the merits of the cause from what the juror may have heard or read, such opinion shall not of itself be sufficient to sustain the challenge, but the court must be satisfied, from all of the circumstances, that the juror cannot disregard such opinion and try the issue impartially."

Actual bias is a question of fact to be determined by the court from all of the circumstances, including the prospective juror's demeanor, apparent intelligence, and candor during *voir dire*. *Villeda*, 324 Or App at 507 (citing *State v. Barone*, 328 Or 68, 74, 969 P2d 1013 (1998), *cert den*, 528

US 1135 (2000)). The fact that a juror discloses preconceived ideas about a case is not dispositive if, on further inquiry, the court can determine that the juror will be able to be impartial. *Id*.

We review the trial court's ruling for an abuse of discretion. A trial court does not abuse its discretion if its decision was within the range of legally correct discretionary choices and produced a permissible, legally correct outcome. *State v. Romero (A138124)*, 236 Or App 640, 643, 237 P3d 894 (2010). The trial court's ruling is entitled to deference, because it depends on findings of fact based on the court's direct observation of the prospective juror during the *voir dire* examination. And the question on review of the trial court's ruling is whether there is legally sufficient evidence to support the trial court's exercise of discretion. *See State v. Lotches*, 331 Or 455, 474, 17 P3d 1045 (2000) ("The question, then, is whether there is evidence in the record to support the trial court's conclusion that [the prospective juror] could serve as a fair and impartial juror.").

When a juror has initially expressed bias during *voir dire*, it is possible for the juror to be "rehabilitated" through questioning by the court and the attorneys, such that the court can determine that the juror is capable of viewing the evidence without the expressed bias. *Villeda*, 324 Or App at 510. If "the excavated bias relates to a specific opinion, any rehabilitation need[s] to sufficiently address that opinion to permit the court to conclude that the juror could disregard such opinion and try the issue impartially." *Id*. (internal quotation marks omitted).

We conclude that there is sufficient evidence to support the trial court's implicit determination that, despite her expressed skepticism of a $7.5 million claim for a dog bite, juror 103 could be impartial and consider plaintiff's claim based on the evidence and the trial court's instructions. At the outset of *voir dire*, in response to the trial court's question whether anyone felt their personal views might affect their "ability to be fair and impartial about this trial," juror 103 did not raise her hand. Juror 103 then expressed skepticism of plaintiff's claim for damages ("I would probably have a problem with that."). She explained and clarified on

further dialogue that the source of her skepticism was the amount of damages sought.

The court then engaged in rehabilitation of the juror. The court first educated juror 103 on the reasons that Oregon plaintiffs are incentivized to plead high dollar amounts in their complaint. The court further explained the elements of plaintiff's claim and that the jury's evaluation of plaintiff's claim would depend on what the evidence showed, and juror 103 agreed. The court next described the two-part inquiry the jury would undertake, asking juror 103 first, "totally separate from money," whether she could determine that defendants were negligent. Juror 103 responded, "Sure." The second question for the jury, the court explained, would be to determine the damages that flowed from the negligence: "Say it's—they can prove, I don't know what the medical bills are, maybe there's surgeries, whole bunch of something, stuff that's really expensive; I'm not going to say a number, but a high number. Could you award a high number after negligence if you heard evidence that supported that?" In response to that question—a question directly targeting the source of the juror's bias—she responded, "Sure." Based on her responses, the court was persuaded that juror 103 could be fair and impartial despite her initial skepticism.

Critically, the court provided education and questions that were specifically directed to the source of the juror's expressed skepticism. The juror's responses to those targeted questions provided sufficient evidence from which the trial court could find that she could be fair and impartial in considering plaintiff's claim. *Cf. Villeda*, 324 Or App at 510-11 ("Because there was never any rehabilitation directed to the witness's professed bias that she is more likely to believe the victim of a sexual assault, her later agreement to the statement that she could 'follow the law' and 'weigh the evidence' did not provide sufficient evidence to support the trial court's conclusion that the juror could disregard that bias."). We conclude, therefore, that the trial court did not abuse its discretion in denying plaintiff's for-cause challenge and therefore affirm the judgment for defendants.

Affirmed.