284 January 24, 2024 No. 37

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DANIEL JAY PECKRON,
*Defendant-Appellant.*

Washington County Circuit Court
21CR24973; A178211

Ramón A. Pagán, Judge. (Judgment entered January 24, 2022)

Kathleen J. Proctor, Judge. (Judgment entered April 7, 2022)

Argued and submitted December 22, 2023.

Marc D. Brown, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, Egan, Judge, and Kamins, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Defendant appeals from convictions after a jury trial of three counts of sexual abuse in the first degree, ORS 163.427. On appeal, defendant contends that the trial court plainly erred in failing to instruct the jury on the applicable "knowingly" mental state for sexual contact. He further contends that the trial court erred in rejecting his request to strike Juror 228 for cause, based on "actual bias." We agree that the trial court plainly erred in failing to instruct on the mental state for the element of sexual contact but decline to exercise our discretion to correct the trial court's plain error. We further conclude that the trial court did not err in rejecting defendant's for-cause challenge to Juror 228. We therefore affirm defendant's convictions.

Defendant was convicted based on evidence that included the testimony of the victim, defendant's grand-niece AP, with whom defendant lived and who was 14 years old at the time of trial. AP testified that defendant often put his hand down her pants and up her shirt. AP testified that once, when she was 10 years old, she was sitting on the edge of the bathtub while defendant was bathing, and defendant took AP's hand and made her touch his penis. Defendant came under investigation after AP reported the abuse to defendant's partner. Defendant was charged with five counts of sexual abuse in the first degree. Defendant asserted that AP had invented stories relating to sexual contacts and denied that he engaged in any sexual contacts with AP. The jury reached guilty verdicts on three counts.

*Instructional plain error*

The trial court gave the following general instructions:

"KNOWINGLY AND WITH KNOWLEDGE

"A person acts 'knowingly' or 'with knowledge' if that person acts with an awareness that his or her conduct is of a particular nature or a particular circumstance exists.

"SEXUAL CONTACT

"Any touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other

intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party.'"

The trial court instructed the jury on the elements of sexual abuse in the first degree:

"SEXUAL ABUSE IN THE FIRST DEGREE

"Oregon law provides that a person commits the crime of sexual abuse in the first degree if the person knowingly subjects another person to sexual contact and the other person is less than 14 years of age.

"In this case, to establish the crime of sexual abuse in the first degree, the state must prove beyond a reasonable doubt the following elements:

"(1)   The act occurred on or between September 3, 2016 and January 22, 2021;

"(2)   *[Defendant] subjected A.P. to sexual contact*; and

"(3)   A.P. was less than 14 years of age."

(Emphasis added.) Defendant contends in his first assignment of error that the trial court plainly erred in failing to instruct the jury on a mental state for the element of the offense that defendant subjected AP to sexual contact. The state concedes error, acknowledging that, to commit sexual abuse in the first-degree, a person must "knowingly" subject the other person to sexual contact, and that the court's instruction on the specific sexual contact element of the offense failed to include the "knowingly" mental state.

But the state contends that the error was harmless, in light of the court's general instruction on "sexual contact," defining "sexual contact" as the actor touching a person's intimate parts or having the person touch the actor's intimate parts "for the purpose of arousing or gratifying the sexual desire of either party." The state contends that, in light of that instruction, in finding that there was "sexual contact," the jury's guilty verdicts established that the jurors necessarily found, beyond a reasonable doubt, that defendant touched the victim's intimate parts with the particular "purpose of arousing or gratifying the sexual desire of either party." As a matter of law, the state contends, the jury necessarily found that, when defendant acted with that

particular purpose in subjecting the victim to sexual contact, he did so with the required "knowing" awareness of the nature of his conduct.

We agree that the trial court plainly erred in failing to instruct the jury on the required mental state for the element of subjecting the victim to sexual contact. However, given the defense theory that defendant never sexually touched AP and that AP invented the stories of his sexual contacts, and the jury's guilty verdicts, which indicate that the jury believed the touching had occurred, we are persuaded that it is unlikely that the jury did not also find that defendant *knowingly* subjected the victim to sexual contact. That distinguishes this case from *State v. Hooper*, 310 Or App 715, 718, 487 P3d 428 (2021), in which we held that the omission of the "knowingly" culpable mental state with respect to the "sexual intercourse" element of the offense of first-degree rape was prejudicial, where the evidence could support a finding that the defendant was in a drunken stupor and did not know he was engaging in intercourse. Additionally, the jury was also obligated to follow the court's instruction that a person commits the offense of sexual abuse in the first degree if the person "knowingly subjects another person to sexual contact," as well as the court's general instruction defining "sexual contact" as the act of touching the victim's intimate parts "*for the purpose of* arousing or gratifying the sexual desire of either party" (emphasis added), which we conclude encompasses "knowing." Under those circumstances, we conclude that the trial court's error in failing to separately instruct the jury on the knowing mental state for the element of sexual contact is unlikely to have affected the verdict. For that reason, we conclude that the ends of justice do not require that we exercise our discretion to correct the error. *See State v. Roy*, 275 Or App 107, 113, 364 P3d 1003 (2015), *rev den*, 359 Or 525 (2016) (recognizing that we exercise that discretion with "utmost caution," taking into account "the ends of justice"); *see also Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991) (describing factors that appellate courts consider in determining whether the exercise discretion to correct plain error). We therefore reject defendant's first assignment of error.

*Juror challenge*

Defendant contends in his second assignment of error that the trial court abused its discretion in rejecting his for-cause challenge to Juror 228 for actual bias. Further, although Juror 228 did not actually sit on the panel because defendant used a peremptory challenge to strike her, defendant contends that the failure to strike Juror 228 for cause was prejudicial, because defendant was required to use a peremptory challenge to strike Juror 228 that otherwise would have been used on a different juror who was ultimately seated. Although we conclude that the question is a close one, in light of our deferential standard of review of the trial court's exercise of discretion, especially the trial court's opportunity to view the juror's demeanor during *voir dire*, we conclude that the trial court did not abuse its discretion in determining that Juror 228 had not expressed "actual bias," and we therefore reject the second assignment.

During *voir dire*, Juror 228 raised her hand when defense counsel asked whether any prospective jurors had "personal experiences that they're concerned could interfere with their ability to listen to all of the evidence and weigh it dispassionately." Defense counsel inquired of Juror 228, who worked for a school district. Counsel asked Juror 228 to describe her experiences, and she said:

> "Just things that have happened in the school that I've been—had information on or been involved in that were abuse type cases. Those definitely color how I'm looking at things."

Juror 228 answered in the affirmative counsel's question whether she had had people disclose sexual abuse to her. Juror 228 clarified in a response to questioning by counsel that she had not had a personal experience with abuse. Defense counsel then sought reassurance from Juror 228 that she could give defendant "a fair shot":

> "[DEFENSE COUNSEL]: And so, you know, this— this is a child sex abuse trial, right? This is going to be really tough. This is going to be hard on everyone. No one wants to be here. Nobody wants to be here talking about this information, right, and so everybody's going to have some resistance to serving on the jury.

"And, again, the question is whether—you know, the law requires that you try your best to move past that and the issue that we have in jury selection is if you're unable to do that. Okay? So, I want you to kind of think about it. And, again, you're going to have some follow-up questions later on about whether you think you can be fair. Basically, the idea is give [defendant] a fair shot and consider that, just because somebody made accusations does not necessarily mean that they're true. Okay? Does that make sense?"

Juror 228 replied, "Yes." Counsel continued to inquire:

"[DEFENSE COUNSEL]:   Okay. Do you think that you have—would have concerns giving [defendant] a fair shot?

"JUROR [228]:   Yes.

"[DEFENSE COUNSEL]:   Okay.

"(Laughter.)

"JUROR [228]:   I have concerns (inaudible).

"[DEFENSE COUNSEL]:   Okay. Thank you for sharing that. I appreciate it."

Counsel spoke for a few minutes to other jurors, several of whom were excused for cause and two who said they believed they could set aside their biases. Counsel then inquired further of Juror 228:

"DEFENSE COUNSEL:   So, you kind of listened to a couple different sides of people. How are you landing at this point?

"JUROR [228]:   Still feeling it might be a little difficult with what I've heard about in the past, but—

"[DEFENSE COUNSEL]:   You heard in the past?

"JUROR [228]:   Yes.

"[DEFENSE COUNSEL]:   Okay. So, are you already running through your mind, all the other scenarios that you know of that are similar to the charges that you just heard read?

"JUROR [228]:   Yeah.

"[DEFENSE COUNSEL:   Okay. Okay. Do you think that you could give [defendant] a fair shot?

"JUROR [228]:   I would try.

"[DEFENSE COUNSEL:   And would you succeed?

"JUROR [228]:   I don't know. I have to be honest.

"[DEFENSE COUNSEL]:   Okay. Okay. And then we're going to talk again."

A bit later, after more inquiry of other jurors, defense counsel returned to questioning Juror 228:

"DEFENSE   COUNSEL]: (Inaudible.) And,   [Juror 228], you just heard the questions, kind of the issues going on. How are you feeling?

"JUROR [228]:   Same.

"[DEFENSE COUNSEL]:   Same, okay. Do you think—I mean, (inaudible) ask you the same question over and over again, but I'm going to ask this. What percentage chance do you think there is that you're going to be able to follow the instructions in this case?

"JUROR [228]:   I don't know that I can give it a percentage.

"[DEFENSE COUNSEL]:   Okay.

"JUROR [228]:   I will do my best.

"* * * * *

"JUROR [228]:   That's all I can say.

"* * * * *

"[DEFENSE COUNSEL]:   * * * Do you think it's possible that a child could make up an accusation, if it wasn't true?

"JUROR [228]:   Not most of the time, no."

    Thus, in answering defense counsel's questions, Juror 228 expressed her view that, "most of the time," children do not make up an accusation. But she had nevertheless stated that she would "do [her] best" to follow the court's instructions.

    ORCP 57 D(1)(g), applicable to criminal trials through ORS 136.210(1), allows a criminal defendant to

challenge a prospective juror for "actual bias." The rule provides:

> "Actual bias is the existence of a state of mind on the part of a juror that satisfies the court, in the exercise of sound discretion, that the juror cannot try the issue impartially and without prejudice to the substantial rights of the party challenging the juror. Actual bias may be in reference to: the action; either party to the action; the sex of the party, the party's attorney, a victim or a witness; or a racial or ethnic group of which the party, the party's attorney, a victim, or a witness is a member, or is perceived to be a member. A challenge for actual bias may be taken for the cause mentioned in this paragraph, but on the trial of such challenge, although it should appear that the juror challenged has formed or expressed an opinion upon the merits of the cause from what the juror may have heard or read, such opinion shall not of itself be sufficient to sustain the challenge, but the court must be satisfied, from all of the circumstances, that the juror cannot disregard such opinion and try the issue impartially."

Defense counsel moved to excuse Juror 228 for cause. The court denied defendant's motion, and defense counsel then used a peremptory challenge to excuse Juror 228. Defense counsel stated on the record that if Juror 228 had been excused for cause, counsel would have used a peremptory challenge against a different juror who was seated.

The trial court explained why it had denied defendant's for-cause challenge:

> "[B]ased on testimony, she repeatedly stated that she was going to do her best. And based on the court's interactions with her and her demeanor, you know, I—I think jurors are allowed to come in with life experiences that affect their—the way that they look at different things. Does that necessarily mean that they're—that they can't do their job, particularly when they say they're going to try? I think they're allowed to have some influences on how they look at certain evidence, etc., and she did state multiple times that she was going to try to follow the rules as best she could, so that was why that was overruled."

On appeal, defendant challenges the trial court's ruling. The question of actual bias is a factual one for the

trial court, "in the exercise of sound discretion." ORCP 57 D(1)(g). Because the trial court has the advantage of observing the demeanor, apparent intelligence, and candor of a challenged prospective juror, the appellate courts will not disturb the trial court's ruling absent an abuse of discretion. *State v. Nefstad*, 309 Or 523, 528, 789 P2d 1326 (1990). Thus, we review the trial court's assessment of actual bias for an abuse of discretion. *State v. Turnidge*, 359 Or 364, 407, 374 P3d 853, *cert den*, 580 US 1021 (2016); *see also State v. Fanus*, 336 Or 63, 83, 79 P3d 847 (2003), *cert den*, 541 US 1075 (2004) (the trial court's assessment of actual bias is a factual question to be answered by the trial court "as an exercise of its discretion"). On appeal, in reviewing the trial court's determination for an abuse of discretion, the question is whether there is legally sufficient evidence to support the court's finding that the prospective juror could be fair and impartial. *State v. Lotches*, 331 Or 455, 474, 17 P3d 1045 (2000), *cert den*, 534 US 833 (2001); *Hartt v. City of Keizer*, 324 Or App 515, 524, 526 P3d 1224 (2023).

As the state correctly explains, there is a presumption that jurors in a criminal trial will follow the court's instructions. *State v. Thompson*, 328 Or 248, 271, 971 P2d 879, *cert den*, 527 US 1042 (1999). Overcoming that presumption requires a determination by the trial court of the probability of actual bias or prejudice; the court, in exercising its discretion, must be convinced that a probability of bias of the juror does not exist. *Lambert v. Srs of St. Joseph*, 277 Or 223, 230, 560 P2d 262 (1977). *See* ORCP 57 D(1)(g); *State v. Montez*, 309 Or 564, 594, 789 P2d 1352 (1990) (The question for the trial court in determining whether a juror must be excused for actual bias is whether the prospective juror "can try the case impartially and follow the trial court's instructions.").

As the trial court here correctly stated, the fact that Juror 228 had formed opinions based on her life experiences is not determinative. *State v. Barone*, 328 Or 68, 74, 969 P2d 1013 (1998), *cert den*, 528 US 1135 (2000) ("[T]he test is whether the prospective juror's ideas or opinions would impair substantially his or her performance of the duties of a juror to decide the case fairly and impartially on the

evidence presented in court."). And, as the trial court also correctly observed, whether a prospective juror's views are likely to impair an ability to perform her duties must be viewed in the context of the entirety of the potential juror's testimony. *Lotches*, 331 Or at 474; ORCP 57 D(1)(g) (stating that "the court must be satisfied, from all of the circumstances, that the juror cannot disregard such opinion and try the issue impartially").

It is clear from the trial court's remarks that the court correctly understood the standard that guided its determination of actual bias. Implicit in the trial court's explanation of its ruling is the conclusion that, based on the court's observations of Juror 228's demeanor during *voir dire* as she answered the questions, and in light of her statements that she would do her best to follow the court's instructions, Juror 228 could be fair and impartial and follow the court's instructions. We are not in a position as an appellate court to reassess the trial court's evaluation of the juror's demeanor. But to the extent that we can make a determination based on a written transcript, we conclude that the evidence in the record is legally sufficient to support the trial court's determination.

Defendant contends that the record does not reflect any rehabilitation of Juror 228. However, in the absence of an expression of "actual bias"—an inability try the case impartially and without prejudice—there was no need for the court or the prosecutor to make an effort to rehabilitate her. *Cf. State v. Villeda*, 324 Or App 502, 510, 526 P3d 1213, *rev allowed*, 371 Or 309 (2023) (in the face of a juror's expressed actual bias, to nonetheless deny a motion to excuse the juror for actual bias, the record must reflect unequivocal rehabilitation in addressing the source of the bias).

In response to defense counsel's questioning, Juror 228 initially expressed uncertainty as to whether she could give defendant a fair trial, but she then stated that she would do her best to follow the court's instructions. In denying defendant's motion to excuse Juror 228 for actual bias, the trial court was satisfied, in the exercise of its sound discretion, that, despite her initially expressed uncertainty and stated view that most of the time, children do not lie about

abuse, Juror 228 could try the case based on the evidence and the court's instructions, "impartially and without prejudice to the substantial rights of the party challenging the juror." ORCP 57 D(1)(g). We cannot conclude on this record that the trial court abused its discretion, and we therefore affirm defendant's convictions.

Affirmed.