No. 562 June 25, 2025 435

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RUSTY ALLEN PUGH,
*Defendant-Appellant.*

Deschutes County Circuit Court
19CR55615; A178991

Alicia N. Sykora, Judge.

Submitted October 15, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Daniel Bennett, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Robert A. Koch, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Hellman, Judge, and O'Connor, Judge.*

O'CONNOR, J.

Reversed and remanded.

_____

  * O'Connor, Judge *vice* Mooney, Senior Judge.

**O'CONNOR, J.**

Defendant appeals a judgment of conviction for five counts of first-degree rape, ORS 163.375; nine counts of first-degree sexual abuse, ORS 163.427; one count of first-degree unlawful sexual penetration, ORS 163.411; and two counts of first-degree sodomy, ORS 163.405. He raises two assignments of error. Because it is dispositive, we write only to address defendant's first assignment, in which he argues that the trial court erred when it failed to remove a juror for cause. Specifically, defendant contends that the trial court abused its discretion in overruling his motion to strike the juror after she disclosed during jury selection that her childhood experience with sexual abuse could impact her ability to serve as a fair and impartial juror. We conclude that the trial court erred, because it gave too much weight to the juror's responses to the trial court's and the prosecutor's attempts to rehabilitate her, instead of giving greater weight to her initial, unprompted statement of bias. *State v. Villeda*, 372 Or 108, 116, 546 P3d 268 (2024). We further conclude that the error was not harmless. Accordingly, we reverse and remand.

The relevant facts are undisputed. Defendant was charged with numerous child sex abuse offenses after his daughter alleged that he had sexually abused her when she was between the ages of eight and 12. After defendant's daughter reported the abuse, two other women, to whom defendant was a father figure, also alleged that defendant had sexually abused them when they were girls.

During jury selection (also called *voir dire*), Juror 537 requested to speak privately with the trial court. She disclosed to the trial court and the parties that, when she was 10 or 11 years old, her dad "fondled [her] when he was drunk." She stated that the abuse occurred "a couple of times" and explained that she had never told anyone about the abuse except her husband. The trial court asked whether the experience "might make it difficult for [her] to hear this case and be impartial to both sides," given that "there are allegations about a father and his own daughter, [and] potentially others around that age ***[.]" Juror 537 responded, "I want to say no but it probably will impact me and my biases." The trial court then asked whether jury

instructions would reduce her bias, to which she responded that she was unsure:

> "THE COURT:   So, the jury—there'll be a jury instruction that says, you know, you have to try not to be biased, you know, be aware and try [to] give everybody the benefit of the doubt, nobody's going to be held beyond a reasonable doubt. Hearing those words from a judge is that going to change or reduce or even eliminate your bias?
>
> "[JUROR 537]:   I just don't know. I think I could be really fair, uh, and impartial, but I - -I wanted to be honest."

The trial court acknowledged that Juror 537 was "in tears and, obviously, very distressed" during the exchange.

The state then asked Juror 537 whether she could be fair and impartial and base a decision on the evidence presented. Juror 537 responded that she would "do everything in [her] power to be fair and impartial" and explained that she "see[s] both sides." The trial court explained that the "goal will be ultimately, given your experiences, * * * to be fair to the defendant in this case," and asked whether the juror could "try[.]" She responded, "Be fair? I—I'm wired to be fair and impartial."

Defense counsel then asked Juror 537 a series of questions. Juror 537 confirmed that she understood the presumption of innocence. When asked whether she would "want to be protective of the accusers," she explained that "it would depend on the evidence that was presented." Defense counsel followed-up, "[I]f it came down to an allegation and a denial, * * * do you believe you'd be able to separate your feelings from making a decision under those circumstances if there's just simply no physical evidence?" Juror 537 stated, "I really think I could." Defense counsel also asked whether her emotional response to the case would "be distracting to [her] during this trial," to which she responded, "[p]otentially." She also agreed that if she were in defendant's position, she would "probably not" want herself to serve as a juror. At that point, defendant moved to excuse the juror for cause.

Before the trial court ruled on defendant's motion, it asked Juror 537 to elaborate on her previous answer. Juror 537 stated,

"[I]f I was in [defendant's] shoes and then I—I was able to pick I would probably pick [jurors] that didn't have, uh, a history of something that might be a little similar. Uh, I—I just—that's logic—a logical conclusion."

Finally, the trial court asked whether she "could use logic and apply analytical reasoning" to the case "despite [her] experiences[.]" Juror 537 answered, "Yes."

The trial court declined to excuse Juror 537 for cause:

"I'm not going to dismiss this juror. I understand that and it's noted on the record, uh, that she has experiences, but she's repeatedly stated she can apply logic and analysis to this case, and she doesn't have to be perfect and I—she's nodding her head now in the affirmative so I'm going to allow this juror to go forward. She's not stricken for cause."

Defendant exercised all six of his peremptory challenges on other jurors, and Juror 537 was seated on the jury.

"We review the trial court's ruling on a challenge to a juror for cause for abuse of discretion." *Villeda*, 372 Or at 110. "Because the trial court has the advantage of observing the juror's demeanor, a trial court's decision on a challenge for cause 'is entitled to deference and will not be disturbed absent a manifest abuse of discretion.'" *Id*. (quoting *State v. Fanus*, 336 Or 63, 83, 79 P3d 847 (2003), *cert den*, 541 US 1075 (2004)). However, the law "that governs challenges for cause for actual bias" limits a trial court's discretion. *Id*. at 111.

A criminal defendant's right to an impartial jury is guaranteed by both the state and federal constitutions. Or Const, Art I, § 11 ("In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury * * *."); US Const, Amend VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury * * *."). ORCP 57 D(1)(g), applicable to criminal trials through ORS 136.210(1), permits a party to challenge a prospective juror for "actual bias," which the rule defines as

"the existence of a state of mind on the part of a juror that satisfies the court, in the exercise of sound discretion, that the juror cannot try the issue impartially and without

prejudice to the substantial rights of the party challenging the juror. Actual bias may be in reference to: the action; either party to the action; the sex of the party, the party's attorney, a victim, or a witness; or a racial or ethnic group of which the party, the party's attorney, a victim, or a witness is a member, or is perceived to be a member. A challenge for actual bias may be taken for the cause mentioned in this paragraph, but on the trial of such challenge, although it should appear that the juror challenged has formed or expressed an opinion upon the merits of the cause from what the juror may have heard or read, such opinion shall not of itself be sufficient to sustain the challenge, but the court must be satisfied, from all of the circumstances, that the juror cannot disregard such opinion and try the issue impartially."

In determining whether a juror should be excluded for actual bias, "the fact that [the juror] has preconceived ideas about a matter relevant to the case is not determinative." *State v. Barone*, 328 Or 68, 74, 969 P2d 1013 (1998), *cert den*, 528 US 1135 (2000). "Rather, the test is whether the prospective juror's ideas or opinions would impair substantially his or her performance of the duties of a juror to decide the case fairly and impartially on the evidence presented in court." *Id.* Put simply, "the court, in exercising its discretion, must be convinced that a probability of bias of the juror does not exist." *State v. Peckron*, 330 Or App 284, 292, 543 P3d 766, *rev den*, 372 Or 437 (2024) (citing *Lambert v. Srs. of St. Joseph*, 277 Or 223, 230, 560 P2d 262 (1977)). The trial court makes that determination by considering "the totality of the potential juror's *voir dire* testimony to discern whether it suggests the probability of bias." *State v. Lotches*, 331 Or 455, 474, 17 P3d 1045 (2000).

In considering the totality of the juror's *voir dire* testimony, a juror's unprompted statements of bias are entitled to greater weight than statements "made in response to statements or leading questions by counsel or the court designed to 'rehabilitate' a juror who had disclosed a pre-existing bias." *Villeda*, 372 Or at 115. Indeed, a party "does not have a right to rehabilitate a biased juror" because "the purpose of the *voir dire* examination [is] investigation, not persuasion." *Id.* at 116 (internal quotation marks omitted). Such attempts to persuade a juror that they can be impartial

despite their express bias "interferes with the court's effort to assess whether the prospective juror's 'probability of bias' is sufficient to excuse the juror for cause." *Id.* at 116-17.

In *Villeda*, the defendant was charged with crimes involving allegations of domestic violence. *Id.* at 111. During *voir dire*, a prospective juror disclosed that she had "several close friends who have been sexually assaulted or raped" and that she "tend[s] to give credibility to the survivor." *Id.* at 111-12. When defense counsel asked whether "she could put that view aside," she responded that she was unsure. *Id.* at 112. The juror further stated she did not believe that a woman would lie in court about being raped, and when asked if she thought "she would be a good juror for this case," she replied that she thought she would be "biased" or "really emotional." *Id.* at 113. Upon further inquiry from the trial court and prosecutor, the juror affirmed that she could "follow the law and [] weigh the evidence as it's presented." *Id.* The trial court denied the defendant's for-cause challenge to that juror. *Id.* On appeal, the Supreme Court concluded that the trial court erred because it relied on the juror's later affirmation that she could fairly weigh the evidence and failed to "give much greater weight" to the juror's unprompted statements of bias, which "exceeded the range of discretion afforded" to the trial court. *Id.* at 118-19 (internal quotation marks omitted).

Here, the trial court abused its discretion by denying defendant's for-cause challenge because the trial court did not give the proper weight to Juror 537's unprompted disclosure that she had a personal experience that could impair her ability to be impartial. While visibly distressed and crying, Juror 537 disclosed sexual abuse from her childhood that she had only previously disclosed to her husband and that, as the trial court acknowledged, shared similarities with the allegations against defendant. Upon immediate follow-up, Juror 537 stated that she was unsure whether she could follow jury instructions regarding juror bias and the burden of proof.

Juror 537's unprompted statement of bias and inability to affirm whether she could follow jury instructions were entitled to greater weight than her later statements

that she was "wired to be fair and impartial" and that she could apply analytical reasoning to defendant's case. As in *Villeda*, "[t]he trial court's reliance on the juror's responses to [the court's and the prosecutor's later] questions and its failure to give 'much greater weight' to the juror's unprompted statements about her bias *** exceed the range of discretion ***." *Id*. at 118-19. The totality of Juror 537's *voir dire* testimony, properly weighed as directed by *Villeda*, indicated the probability of bias. Thus, the trial court erred when it denied defendant's for-cause challenge to Juror 537 for actual bias.

Further, we reject the state's argument that Juror 537 "did not elucidate any specific bias, such as instinctively wanting to side with any accusers," and that, based on the trial court's subsequent investigation to clarify her statement, the trial court permissibly concluded that Juror 537 could be fair and impartial. The state emphasizes that, although the case "triggered an emotional response" in Juror 537 based on her life experiences, the trial court, with the advantage of observing the juror's demeanor, properly credited her later unqualified assertions that she could be fair and impartial.

First, we disagree that Juror 537 merely disclosed an emotional reaction to the trial court. Rather, Juror 537 expressly disclosed that her experiences were likely to "impact [her] and [her] biases." While she did not explicitly state whether those biases favored the state or the state's witnesses, the context of her statements makes clear that she was expressing a concern that she could not be fair or impartial to defendant. In fact, the trial court's immediate response to her disclosure was to ask whether jury instructions regarding the state's burden of proof would eliminate her bias, which confirms that the trial court understood Juror 537 to be expressing a bias against defendant.

Second, while trial courts maintain their discretion to determine whether a juror is "actually biased," as *Villeda* clarified, "a juror's initial reactions or answers given in *voir dire* without undue debate and confinement of issues should be afforded much greater weight in determining the juror's true frame of mind." *Id*. at 115 (internal quotation marks and brackets omitted). That does not preclude a trial court

from resolving a juror's seemingly contradictory expressions regarding their bias and ability to be impartial. However, as *Villeda* recognized, "[p]osing close-ended questions to 'rehabilitate' a juror is an ineffective way to discern a juror's actual biases and achieve the goal of selecting a fair and impartial jury," and, accordingly, a trial court must resolve contradictions between juror statements by placing "special weight" on unprompted statements of bias. *Id.* at 116, 118. Here, the trial court's ruling specially weighed Juror 537's statement that she could apply analytical reasoning, made in response to the trial court's close-ended question at the end of the *voir dire* examination. While Juror 537 further asserted that she was "wired to be fair and impartial," she also admitted that her emotions could distract her from the case, and that she believed herself to be a poor juror for defendant's case due to the similarities between her personal experience and the allegations against him. Because the trial court failed to properly weigh Juror 537's initial statement that her personal experiences would impact her biases, we conclude that the trial court abused its discretion in overruling defendant's for-cause challenge.

Under Article VII (Amended), section 3, of the Oregon Constitution, we must affirm a judgment notwithstanding any error committed by the trial court if there is "little likelihood that [the] error affected the outcome." *Villeda*, 372 Or at 119 (citing *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003)). To establish prejudice resulting from a trial court's denial of a for-cause challenge to a potential juror, a defendant must (1) exhaust all peremptory challenges and (2) create a record that they were compelled to accept an objectionable juror. *State v. Wright*, 294 Or App 772, 773-74, 431 P3d 471 (2018), *rev den*, 364 Or 294 (2019). If the trial court fails to strike a juror for cause due to a substantial probability of bias and that juror is seated, the error "is presumed to be prejudicial." *State v. Gollas-Gomez*, 292 Or App 285, 293, 423 P3d 162 (2018). Here, defendant exhausted all his peremptory challenges and Juror 537 was seated on the jury. We therefore presume that the error prejudiced defendant.

Reversed and remanded.